MOUNT VERNON BANK, Appellant, v. PORTER et al.

Division Two, February 21, 1899.

1. **Cashier:** PROFITS IN NEGOTIATING SALE OF BONDS. Where the
evidence shows that defendant negotiated a sale of bonds while
cashier of a bank and while in the discharge of his duties as such
cashier, whatever profit he derived from such sale belongs to the
bank, and not to him.

2. ———: ———: SUSPICION OF PROFIT. But it must be shown by
substantial evidence that he received some profit from such negotia-
tion while in the employ of the bank as its cashier. A mere
suspicion that he did receive a profit is not sufficient, and it is held in
this case that there was no substantial evidence that he did.

3. **Practice;** MOTION FOR NEW TRIAL: AMENDMENT. An amendment
to a motion for a new trial can not be made later than four days
after the trial, even though the motion itself was filed within the
four days.

*Transferred from St. Louis Court of Appeals.*

REVERSED (*with directions*).

H. Brumback, N. Gibbs and Samp Jennings for appellant.

(1) All the correspondence between Porter and the W. C. Little Bond Company concerning the negotiation and sale of those bonds, while he was plaintiff's cashier, is competent evidence on those issues, and should have been admitted. (2) The motion to set aside the nonsuit, and for a new trial, was filed on the very day the nonsuit was taken; and at the same term, and before said motion was considered by the court, plaintiff asked leave of the court to amend said motion by inserting another cause for a new trial (i. e. newly discovered evidence), which cause first came to plaintiff's knowledge more than four days after the trial. The same right of amendment should be applied to motions as to other pleadings. Parties should not be cut off by mere technicalities. Such newly discovered evidence was clearly competent, it was the admission of the defendants, it was not cumulative, for no admissions were in evidence, and that evidence alone would warrant a verdict for plaintiff. (3) The bank never got a cent for these bonds except what went to Guinney, and Porter got $405, the $250 that he collected through the Cedar County Bank and the $155 that he got from the W. C. Little Bond Company, and placed to his credit in the plaintiff bank, by manipulating the remittance register of the bank. He was at the time plaintiff's cashier and its active agent. He was to have half of the commissions for selling these bonds. All this was proven by plaintiff and this makes a *prima facie* case, and in addition plaintiff proved that the business was done for the bank, which makes a very strong case for plaintiff. St. Louis v. Railroad, 114 Mo. 18; Story on Agency (7 Ed.), secs. 207, 211 and 214; 1 Parsons on Contracts (5 Ed.), p. 86; Murdock v. Milner, 84 Mo. 96; Ehrlich v. Ins. Co., 88 Mo. 256; Bent v. Priest, 86 Mo. 482;

Dutton v. Willner, 52 N. Y. 319; Bain v. Brown, 56 N. Y. 285; Hombs v. Corbin, 34 Mo. App. 397.

W. B. SKINNER and MANN & TALBUTT for respondents.

(1) Nearly all of said correspondence was admitted and none was excluded that should have been admitted. The letters excluded are not set out in appellant's statement so that the only way the court can find the same is by wading through the abstract, this alone bars appellant of the right to have them considered. Besides there is ample time to decide to whom the money belonged when it has been shown that Porter received a cent of commission. Admit every letter in the record and yet no light is thrown upon the first and essential proposition, did Porter receive any money? Cheek v. Waldron, 39 Mo. App. 21; Bassett v. Glover, 31 Mo. App. 150. (2) Appellant complains of the action of the court in refusing to allow it to amend its motion for a new trial at the adjourned term and over one hundred days after judgment. The amendment came too late and the court properly excluded the same. (3) Waiving other defects, the newly discovered evidence contradicts appellant's entire record. It alleges that Porter received the money from three specifically alleged persons, all of whom testify for appellant that he did not get it. (4) Appellant says the bank got nothing for these bonds except what went to Guinney. Porter got $405, $250 through Cedar County Bank and $155 from William C. Little Bond Company. He was to have half of the commissions for selling these bonds. This statement has nothing to support it. Duff v. Ins. Co., 56 Mo. App. 362.

BURGESS, J.—This is an action upon the defendant Porter's official bond as cashier of the plaintiff bank, charging him with converting commissions belonging to the bank, and arising out of the negotiation and sale of certain bonds

issued by the Pierce City Water Company while he was cashier of the bank. The trial resulted in a judgment for defendants, whereupon the case was appealed to the St. Louis Court of Appeals, where the judgment was reversed, but the case was certified to this court upon the ground that the opinion of that court is in conflict with the opinions of the Supreme Court in State v. Brooks, 92 Mo. loc. cit. 591, and State v. Dusenberry, 112 Mo. loc. cit. 295.

The petition alleges that Porter, while in the employment of plaintiff and in the line of his employment as cashier, "did negotiate and sell for Jerry Guinney and for the Pierce City Water Company fifty bonds of the face value of $25,000, and for commissions and compensation for such services did collect, retain and receive from said Jerry Guinney and the Pierce City Water Company and William C. Little Bond Company a thousand dollars, and retained and appropriated the whole thereof," etc.

The answer of Porter is a general denial. The other defendants answered separately, and alleged that the sale or negotiation of bonds by the plaintiff was not within the bank's corporate powers, and that if Porter received and converted the commissions as claimed, they, as his bondsmen, were not liable therefor.

At the close of plaintiff's evidence the court, at the request of the defendants, instructed the jury "that under the pleadings and evidence in this case your verdict should be for defendants," whereupon plaintiff took a nonsuit with leave to move to set the same aside, and having unsuccessfully done so, it appeals.

The evidence on the part of plaintiff showed that Jerry Guinney, president of the Pierce City Water Company, acting for the company, placed in the hands of the defendant Porter $25,000 of Pierce City Water bonds; that he negotiated with and through the bank several loans; that the last one of about $2,000 was after the bonds were in the possession

of the bank, and that this loan was not to be paid until the bonds were sold. That he, Guinney, realized only $22,500 on the bonds, and perhaps some interest, which ought to have been about $200.

W. C. Little testified that he was president of the W. C. Little Bond Company in 1888, and that the company of which he was president bought the bonds, the amount of which was $25,000, and paid ninety cents on their face value therefor, but could not say to whom he paid the purchase money, whether to Porter or Guinney.

F. W. Stumpe, cashier of the Washington Bank, testified that he bought fifty bonds of $500 each, making a total of $25,000, from the W. C. Little Bond Company of St. Louis, Missouri, and paid $23,000 for them. That the bank loaned the plaintiff $5,000, and that when the loan was made the bank of Washington was and for some time had been, negotiating with the W. C. Little Bond Company and John D. Porter for the purchase of the Pierce City Water Company bonds and had advanced to said Porter, as cashier of the Mt. Vernon Bank, on account of the purchase of said bonds, because they were not then ready for delivery, and that the note was paid by the delivery of the bonds. That the loan thus made to the Mt. Vernon Bank was paid out of the purchase price for the bonds.

J. T. Porter, president of plaintiff bank, testified that Guinney applied to the bank for a loan of $3,500, and that Porter said it would only be a short time until he would get the money out of the bonds, and that they had better guarantee the payment of this $3,500 note as individuals, but probably not as a bank, and that he and Porter guaranteed the payment of this $3,500. That this note was negotiated and the money paid over to Guinney. That the inducement was that we were to get the premium out of the bonds for the bank.

In a letter by Porter to S. W. Stumpy, cashier, Washington, Missouri, of date October 8, 1888, he said: "I have advanced Mr. Guinney on the sale $3,500 and he wants more by the tenth inst. . . . . . . . John D. Porter, Cash."

Porter, in his correspondence with Little about the sale of the bonds, used the bank's paper with its letterheads thereon, and his letters were usually signed as cashier. He went to Pierce City on one occasion to negotiate for the bonds and charged the expenses of the trip up to plaintiff. On October 4, 1888, Porter as cashier, wrote to James B. True, cashier Laclede National Bank, St. Louis, Missouri, as follows: "We are expecting to get proceeds of bond sale made when I was in the city a few days since. It will amount to $23,000 to $25,000. The sale is closed and security accepted, and bonds in hands of engravers. We may need some money for a few days until engraving is complete, and bonds signed, if we do can we get it?"

He afterwards, as cashier, sent the bonds to True to deliver and to draw on his bank for $2,500, to stop protest on Guinney's note. He was, during all this time, the active agent of plaintiff in all of its business transactions. He as cashier collected the $22,500 on the bonds, which went to Guinney, and then drew a check on the W. C. Little Bond Company in favor of himself for $250, indorsed it to the Cedar County Bank at Stockton, Missouri, and had it placed to his own credit in said bank, which was the only deposit that he ever had with it. Of this deposit $203 was collected on Porter's checks through the plaintiff bank.

On October 13, 1888, Porter drew on W. C. Little for $155, balance on bond deal and had it placed to plaintiff's credit in the Laclede bank. On the same day there appears on the remittance register of plaintiff bank in Porter's handwriting an entry of a remittance of $155, but the register does not show to whom sent, and it is the only remittance on the register which fails to show a complete abstract of the

remittance.    The books of plaintiff bank also show that Porter on the same day, November 13, 1888, deposited with the bank $155.50 in gold.

Upon the facts thus detailed which were shown by the evidence, is based the contention that they were sufficient to have the case go to the jury.

The evidence clearly shows that the sale of the Pierce City Water Company bonds was negotiated by Porter while cashier of the plaintiff bank and while in the discharge of his duties as such cashier, and there is no principle of law better settled than that under such circumstances whatever profit he derived from such sale belongs to the bank and not to him. [Mt. Vernon Bank v. Porter, 52 Mo. App. 244.]

As was said in Murdock v. Milner, 84 Mo. 102: "The facts . . . . . . . disclosed by the evidence brings plaintiff's case within the operation of the principle that in all cases where a person is actually or constructively an agent for another, all profits and advantages made by him in the business beyond his ordinary compensation is for the benefit of his employer." [Story on Agency, p. 246, sec. 211; Bent v. Priest, 86 Mo. 482; Pomeroy v. Benton, 57 Mo. loc. cit. 544.]

But the facts alone that Porter was the agent of plaintiff in negotiating the bonds, and that he did negotiate them was not sufficient to entitle plaintiff to have the case submitted to the jury, but in addition thereto it devolved upon it to show by substantial evidence that he received some compensation or profit therefor while its agent, or for services rendered while such.    A mere scintilla of evidence or suspicion to that effect was not sufficient, and it is within the ban of this rule that the evidence adduced by plaintiff comes.    However strong the suspicion that he did receive a profit for negotiating the bonds there was no tangible evidence that he did, and as has been said this was not sufficient.    The same conclusion was reached by the St. Louis Court of Appeals, and is clearly justified by the facts disclosed by the record.

Within four days after verdict plaintiff filed its motion for a new trial upon the grounds of the exclusion of legal and competent evidence offered by it, and the giving of an instruction at defendant's request in the nature of a demurrer to the evidence.    After the expiration of four days after the trial, but during the term and prior to the hearing of the motion for a new trial, the plaintiff asked leave to amend its motion by adding thereto the additional ground of newly discovered evidence.    The motion to amend was accompanied by the affidavits of several persons, which tended to show that the newly discovered evidence was material to the issues involved in the case, and that it was no fault of the plaintiff that its officers did not know of it, and introduce it on the trial.    The motion to amend the motion for a new trial was overruled, and this is also assigned for error.

Upon this point the court of appeals reversed the judgment of the trial court and remanded the cause.

Section 2243, Revised Statutes 1889, provides that "all motions for new trials and in arrest of judgment shall be made within four days after the trial, if the term shall so long continue; and if not, then before the end of term," and is clearly mandatory, leaving no discretion whatever in the court with respect to the time of filing such motions. Nor does it make any exception upon the ground of newly discovered evidence, or anything else which may occur or be discovered after the expiration of the time fixed thereby in which the motion is required to be filed.    The merit of such a motion with respect to its filing has nothing to do with it. Whether meritorious or otherwise, it must be filed within the prescribed time.    [State v. Brooks, 92 Mo. 542; Maloney v. Railroad, 122 Mo. 106; City of St. Joseph v. Robison, 125 Mo. 1.]

In State v. Dusenberry, 112 Mo. 277, defendant asked leave to file an amended motion for a new trial after the expiration of the four days allowed by law for filing such motions, which the court refused, and it was held that leave was

properly refused.    Again, in the recent case of Bank v. Bennett, 138 Mo. 494, it was held that the statute requiring a motion for a new trial to be filed within four days after verdict, is mandatory, and after the expiration of the four days, an amendment to the motion can not be made.

If the losing party in a suit may file an amended motion for a new trial, or amend one already filed after the expiration of four judicial days after verdict, when does the time expire when he may not do so?   No one will contend that he can file such a motion in the first instance after the expiration of the four judicial days after verdict, and this too whether the court be in session during that term or not, and it seems illogical to say that such a motion may be amended at any time after the expiration of the time in which the motion must in the first instance be filed.    If it can be amended at all after the expiration of the four days, it can be done indefinitely in the discretion of the court.    Such practice could but result in endless confusion and frequent applications to amend such motions, and would be impracticable, and for that reason the legislature in its wisdom saw proper to prescribe the time in which such motions should be filed, and made no provision for amending a motion already filed.

For these considerations we reverse the judgment of the court of appeals with directions to that court to enter up judgment affirming the judgment of the circuit court.

GANTT, P. J., and SHERWOOD, J., concur.