THE STATE ex rel. MARY IBA v. JAMES ELLISON et al., Judges of Kansas City Court of Appeals.

In Banc, April 2, 1914.

1. **BILL OF EXCEPTIONS: Judge's Reasons for Overruling Motion for New Trial: Agreement to be Supplied in Writing: Dictated to Stenographer.** If respondent's counsel agreed that the remarks of the trial judge, made at the time he overruled the motion for a new trial, might be supplied by him in writing and made a part of the bill of exceptions, the agreement was complied with by an oral dictation to the court stenographer of the remarks made and an incorporation of a transcript of them in the bill and the approval of the bill by the judge. It would be too narrow and technical to hold that such method was not a reproduction in writing of the remarks made.

2. **NEW TRIAL: Preponderance of Evidence: Mind of Judge Affected by Affidavits Untimely Filed.** Where when the case was ended the trial judge felt that the preponderance of the evidence was with the defendants but not so greatly in their favor as to warrant him in setting aside the verdict, the fact that when affidavits tending strongly to show that the testimony of the principal witness was false were filed fifty-seven days afterwards his mind changed to the view that he ought to grant a new trial, and the fact that after said witness was indicted and tried in the criminal court and acquitted of the charge of perjury his mind again changed back to the view that the verdict ought not to be set aside, is no ground for the appellate court

to compel the granting of a motion for a new trial. In spite of the two mental changes in the judge's mind after the affidavits were untimely filed, the fact remains that before they were filed his conviction was that the motion should be overruled; and as they were untimely filed he was not warranted in considering them or the acquittal of the witness.

3. ———: ———: **Converse of Rule.** Great latitude is allowed the trial court by the statute (Sec. 2023, R. S. 1909) in granting one new trial on the ground that the weight of the evidence is against the verdict. The action of the court in granting one new trial on that ground will not be disturbed on appeal by the Supreme Court, unless it appear from all the evidence in the case that a verdict in favor of the party to whom the new trial was granted could not have been allowed to stand. But the statute has no application in a converse case; if the trial judge refuse to grant a new trial on the ground that the weight of the evidence is against the verdict, it is incumbent upon the appellant to establish to the satisfaction of the appellate court, in order to rebut the presumption of right action, that error occurred upon the trial so prejudicial as to require a reversal; otherwise a new trial will not be granted.

4. ———: **Untimely Filed Motion: Consideration.** Neither a motion for a new trial nor an amended or supplemental motion for a new trial may be filed after the expiration of the four days fixed by the statute; nor may a motion timely filed be amended in matter of substance after such time has elapsed. Nor is the trial court warranted in considering affidavits, in support of "suggestions" in support of the motion for a new trial, filed after the time for filing the motion had expired, which in effect amount to newly discovered evidence, in that they tend to show the testimony of a main witness to be perjured.

5. ———: **Error of Law by Court of Appeals: Certiorari.** Upon a question of law arising upon undisputed facts a court of appeals is required to follow the last previous ruling of the Supreme Court; if it do not, a judgment rendered by it will be quashed upon *certiorari*.

*Held*, by WOODSON, J., dissenting, with whom BOND, J., concurs, that the assumption of jurisdiction by the Supreme Court to review errors of courts of appeals as to matters of law is a usurpation of authority, not authorized by section 6 of the amendment to the Constitution of 1884, whose practical effect will be to largely destroy the opinions of those courts and overburden the Supreme Court.

*Certiorari.*

JUDGMENT QUASHED AND CAUSE REMANDED.

*John S. Boyer* and *Charles C. Crow* for relator.

(1) The Supreme Court has superintending control over the Kansas City Court of Appeals where it has acted beyond or in excess of its power and jurisdiction. State ex rel. v. Broaddus, 245 Mo. 123. (2) An appellate court in this State is limited to the errors assigned in the motion for a new trial filed within the time allowed by law, and an attempt of an appellate court to investigate a question suggested otherwise is beyond its power and jurisdiction. R. S. 1909, sec. 2081; King v. Gilson, 206 Mo. 280; Rodan v. Transit Co., 207 Mo. 406; Winn v. Grier, 217 Mo. 461; St. Louis v. Lawton, 189 Mo. 474; Williams v. Railroad, 156 Mo. App. 677; Fussellman v. Railroad, 139 Mo. App. 201; Brenton v. Thomas, 138 Mo. App. 73; Stauffer v. Railroad, 243 Mo. 323; Ewart v. Peniston, 233 Mo. 695; Sterrett v. Railroad, 225 Mo. 111; Street v. School District, 221 Mo. 671; Lynch v. Railroad, 208 Mo. 42; Bank v. Porter, 148 Mo. 183. (3) There is no power or jurisdiction in the appellate court to review the action of the trial court in overruling a motion or supplemental motion for new trial filed out of time—the reason being that if the appellate court could review the action of the court on a motion or supplemental motion filed out of time the statute requiring the filing of a motion for new trial as a basis for conferring jurisdiction and power on the appellate court to review, would be repealed and the appellate court would then review all alleged errors committed at the trial. R. S. 1909, secs. 2081, 2038; Hamman v. Coal Co., 156 Mo. 232; Green v. Walker, 99 Mo. 68. (4) The Kansas City Court of Appeals exceeded its power and jurisdiction in considering the question of the state of mind of the trial judge in overruling motion for new trial and exceeded its jurisdiction in ruling that there is no good reason why the appellate court should not remand a cause for what it considered error of the

trial court in overruling a supplemental motion for new trial as well as reversing a cause where the trial court had sustained a motion for new trial. Rausch v. Michel, 192 Mo. 303; Mead v. Spaulding, 94 Mo. 43; Mound City v. Shooting I. Co., 74 Mo. App. 661; Insurance Co. v. McDearmon, 133 Mo. App. 673; Green v. Railroad, 211 Mo. 18; Chlanda v. Railroad, 213 Mo. 244. (5) This court will control by *certiorari* any judgment of the Kansas City Court of Appeals entered, that is in direct conflict with a controlling decision of the Supreme Court and in this case the decision is in conflict with every decision of the Supreme Court, the Kansas City Court of Appeals and the St. Louis Court of Appeals that has been handed down in the history of our State. See cases cited above. And relator asks this court to quash the judgment of the Kansas City Court of Appeals in refusing said cause and that it be directed to restore the said judgment of the circuit court of Buchanan county. Curtis v. Sexton, 252 Mo. 221.

*O. M. Spencer* and *Culver & Phillip* for respondents.

This court has never gone further than to hold, as it did in State ex rel. v. Broaddus, 238 Mo. 189, reaffirmed in Curtis v. Sexton, 252 Mo. 221, that it will control the decision of the Court of Appeals only when the decision of said last named court is in conflict with the prior decision of this court in the same case on the same record. This court has never held that it would control the decision of the Court of Appeals because this court might be of the opinion that the decision of the Court of Appeals in any given case was in conflict with a prior decision of this court in some other case. On the contrary, this court has held in a number of cases that it would not interfere with the decision of the Court of Appeals in such circumstances. State ex

rel. v. Smith, 173 Mo. 398; Railroad v. Smith, 154 Mo. 300. This court has expressly ruled that it is for the Court of Appeals to say whether its decision is in conflict with any prior decision of the Supreme Court. State ex rel. v. Smith, 107 Mo. 527; State ex rel. v. Rombauer, 140 Mo. 124. If this court is now to extend its doctrine and rule that it will quash the judgment of a Court of Appeals in any case in which this court thinks that judgment conflicts with the previous decisions of this court, it must overrule the numerous previous decisions of this court, and establish a new judicial system in this State. The Courts of Appeals will no longer be courts of last resort in those cases of which the Constitution and law give them exclusive jurisdiction. Of course, we can conceive of a case where the Court of Appeals might itself decide that its judgment was in conflict with a prior decision of this court which it refused to follow, because it thought it was wrong. In fact, there are cases of record, presenting just such a situation. Bank v. Weston, 144 Mo. 407; Shaffer v. Railroad, 144 Mo. 170. We have no doubt that in such circumstances this court would have power to compel the Court of Appeals to make its judgment conform to the previous decision of this court. Unquestionably the Constitution requires the Courts of Appeal to follow the last previous decision of this court; but unquestionably the law also confers upon the Court of Appeals the power to decide whether their judgment is in accordance with the last utterance of this court. And so long as the Courts of Appeals construe their judgment to be in harmony with the controlling decision of this court this court cannot review or annul their judgments.

FARIS, J.—This is an original proceeding by *certiorari* brought in this court against the respondents, as judges of the Kansas City Court of Appeals, to quash a judgment rendered by them in that court in a

case wherein Mary Iba was respondent, and the Chicago, Burlington & Quincy Railroad Company and another, were appellants.

Respondents, as judges of said Court of Appeals, on the 5th day of May, 1913, rendered an opinion in the case of Iba v. Chicago, Burlington & Quincy Railroad Company et al. (hereinafter the case will be referred to as the "Iba case," and the parties therein as the "plaintiff" and the "defendants," respectively) in which the judgment of the trial court was reversed and the case remanded for a new trial. This opinion is officially reported in 172 Mo. App. 141, where the facts of the case, so far as the same may be pertinent and so far as the same may not be in our opinion set down, may be read more at length.

Suffice it here to say, that plaintiff in the Iba case, one Mary Iba, on the 14th day of December, 1909, filed in the circuit court of Buchanan county an action for damages against the defendant railroad and another for the negligent killing of said plaintiff's husband, one Frederick B. Iba, which it was averred in said petition occurred on the 13th day of October, 1909, on account of the carelessness and negligence of defendant railroad and one Thomas Phelan, who was the conductor of the passenger train on which, or by means of which, the casualties producing the death of decedent occurred. Upon the trial of the Iba case the plaintiff therein prevailed and was by the verdict of a jury awarded the sum of five thousand dollars as damages. The verdict of the jury in the Iba case was rendered on the 15th day of February, 1911.

Three days after the rendition by the jury of its verdict in the Iba case, and on the 18th day of February, 1911, defendants therein filed their motion for a new trial, which motion, since it cuts some considerable figure in this case (omitting caption and other formal parts), we append as follows:

"Come now the defendants in the above entitled cause, and move the court to set aside the finding, judgment and verdict herein, and grant the defendants and each of them, a new trial of said cause, and in support of said motion say:

"1. The court erred in refusing the defendant railroad company's instruction in the nature of a demurrer asked by said defendant at the close of plaintiff's testimony.

"2. The court erred in refusing defendant Phelan's instruction in the nature of a demurrer, asked by said defendant at the close of plaintiff's testimony.

"3. The court erred in refusing the instruction to find for defendant railroad company, asked by said defendant railroad company, at the close of all the testimony in the case.

"4. The court erred in refusing defendant Phelan's instruction to find for said defendant, asked by said defendant at the close of all the testimony in the case.

"5. The court erred in giving instructions 1, 2, 3, 4, 5, 6 and 7, as asked by plaintiff, and each of them.

"6. The court erred in admitting improper and illegal testimony offered on the part of the plaintiff.

"7. The court erred in excluding proper and legal testimony offered on the part of the defendants and each of them.

"8. The court erred in overruling and refusing to sustain defendant Railroad Company's petition for removal of the cause to the U. S. Circuit Court, for the Western District of Missouri, St. Joseph Division, which was filed on the first day that this cause was returnable to this court.

"9. The court erred in overruling and refusing to sustain the petition for the removal of this cause to the U. S. Circuit Court, for the Western District of Missouri, St. Joseph Division, filed by the defend-

ant Railroad Company, at the close of all the testimony in the cause.

"10.    The verdict is against the evidence.

"11.    The verdict is against the weight of the evidence.

"12.    The verdict is excessive.

"13.    The verdict is the result of passion, prejudice and bias on the part of the jury."

Following the filing of this motion, on which no action at the time was taken by the trial court, and forty-seven days thereafter, to be exact on the 6th day of April, 1911, defendants in the Iba case, during the same term of court at which the verdict aforesaid was rendered, appeared and filed therein a paper duly verified by counsel for defendants as being correct, and which was called by defendants "*a suggestion to the court.*" This document is of some importance in this case and in order that a full understanding of the facts may be had we append it in full, caption and verification omitted:

"Come now the defendants in the above entitled cause, and by way of suggestion to the court as to the granting of a new trial in this cause and setting aside the verdict rendered herein, and as supplementary to and in support of their motion therefor, heretofore filed herein, state that on the trial of this cause during the present term of this court plaintiff introduced two witnesses, to-wit: Claude Atterbury and Albert Rise, who claimed in their testimony to have been present at the town of Easton, in the county of Buchanan, State of Missouri, on the 13th day of October, 1910, when Frederick Iba, the deceased husband of the plaintiff, was struck and killed by a passenger train of the defendant railroad company, and that plaintiff introduced no other witnesses who knew or claimed to know the facts in relation to the killing of said deceased, or claimed to have been present at the time; that the said Albert Rise on said trial was duly sworn and tes-

tified that he was present at said town of Easton on
said day, and was standing on the platform of the de-
pot at said place, and that he saw said deceased board
the passenger train of said defendant railroad com-
pany, and that he saw the defendant Phelan catch hold
of said deceased, and pull and push him, thereby caus-
ing the said deceased to strike a truck standing on
said depot platform, and fall from said train; that in
truth and fact the said witness, Albert Rise, was not
present at said time and place and did not see the said
defendant board said train, and did not see said de-
fendant Phelan catch hold of said deceased, and pull
or push him, and knew nothing of his own knowledge
or as an eye witness of what occurred at said depot,
at the time said deceased was struck and injured; but
on the contrary, these defendants say and allege that
said Albert Rise on the day and at the time said Fred-
erick Iba, deceased, was struck and injured and died,
was about three miles distant from said town of Eas-
ton, engaged in picking and packing apples, in com-
pany with a number of other persons, and that said
Rise at the trial of said cause, in the testimony given
by him, knowingly and wilfully testified falsely to the
facts hereinbefore set out.   That in support hereof
these defendants file herewith the affidavits of Bert
Ruoff, Chris Ruoff, Daisy Ruoff, Lillie Wright, George
Wright, Frank Willis, John Wogan and Allen Estes.

"That the defendants had no knowledge or infor-
mation as to the falsity of the testimony of said Rise,
until after the lapse of more than four days from the
time the verdict of the jury was returned herein."

To the above paper, as stated therein, there were
attached and filed with it, eight certain affidavits of
the persons in such suggestion named, tending to show
the facts urged in the suggestion, that is to say, that
Albert Rise, the witness named in the suggestion, was
not in fact present at the time of the killing of said
Frederick Iba, but that he was more than three miles

away and that he never saw the accident, or any part thereof. On April 5, 1911, the day preceding the filing of this suggestion and the affidavits accompanying the same, Albert Rise, the witness named therein, was indicted by a grand jury of Buchanan county for perjury, charged in the indictment to have been committed by him in the Iba case under the circumstances foreshadowed by the suggestion.

Thereafter said Rise was tried upon this charge of perjury on the 18th day of April, 1911, in the criminal court of Buchanan county, and by the verdict of a jury in the latter court, was found not guilty. Thereupon, and on the same day, to-wit, the 18th day of April, 1911, certified copies of the indictment in the case of the State of Missouri v. Rise, of the verdict of the jury acquitting Rise thereof, and of the judgment of the criminal court discharging him, were offered in evidence in the Iba case in contravention and disproof of the said suggestion, with the affidavits attached, which had been by the defendants in said case theretofore filed. It will be noted that the latter papers were filed fifty-seven days after the expiration of the time mentioned by statute within which motions for a new trial following a verdict, may be filed. In the meantime, from the date of the rendition of the verdict in the Iba case, until the 19th day of April, 1911, the circuit court of Buchanan county had continued in session in the regular January term, 1911, of said court, without having adjourned to court in course. The motion for a new trial in the Iba case, which had then been on file some fifty-seven or fifty-eight days, was taken up by Judge Rusk, the regular judge of the circuit court of Buchanan county, in whose division the Iba case was then pending, and by him overruled.

During the consideration of this motion and while Judge Rusk was in the act of passing upon it, and while overruling it, he made, as appears from the context, certain remarks indicating the condition of his mind

upon certain conclusions and views held by him touching the case and the mental processes by which these conclusions and views had been reached. At the time of their initial making these remarks were not taken down. Subsequently, however, and inferably just following the overruling of the motion for a new trial, the following colloquy occurred:

"Mr. Phillip: I would like for your Honor to let the record show the remarks your Honor made in overruling defendants' motion for a new trial.

"The Court: You want to get this whole thing before the Court of Appeals, and let them say, and I would be glad for them to do it.

"Mr. Crow: Then your Honor can write out your Honor's views on this question, and I will agree to have it made a part of the bill of exceptions.

"Mr. Phillip: I would like for your Honor to state it. That your Honor says, that you felt a new trial in this case ought to be granted, but you felt that under the legal rule you were not permitted to grant it; that is the substance of it.

"The Court: That approaches what I said. What I tried to say was this: That in the original trial of this Iba case, if the decision of the case had been left to me, I would have decided for the defendants, but when the case was ended, I did not feel that the preponderance of the evidence was so greatly in favor of the defendants as to warrant me in setting the verdict aside. Afterwards, these affidavits were filed against Rise, and that threw such a suspicion in my mind against his testimony, that I felt constrained then to set the verdict aside. Afterwards Rise was indicted and tried in the criminal court and acquitted. Then I felt that I ought to respect the verdict of that jury and sustain the verdict of this jury, and I felt constrained to that, by my respect for the machinery of courts and trials. Then if I shut this out, if I shut the right of these two juries out and get back to my

own conclusions, *weighing Rise's testimony as affected by the suspicions that had been thrown in my mind and everything that I had learned about the case,* then I would still conclude that the verdict ought to be set aside, but I feel that I ought to defer and that I am outweighed and overruled by the verdict of this jury and the conclusion of the jury in the criminal court.

"Mr. Phillip: And in substance, that personally, the court feels that the verdict ought to be set aside, but you don't think you ought to set it aside in view of the two verdicts returned, one in the criminal court, and one here?

"The Court: Yes, sir; that is it. Now if they can give us any light on that it may help out some other time."

From the verdict and judgment rendered in the Iba case the defendants took and perfected an appeal to the Kansas City Court of Appeals, in which court, before the case reached the stage at which we find it, it enjoyed a fitful and somewhat tempestuous career. It seems to have been twice affirmed and to have had sustained therein, following such affirmances, two several motions for re-hearings; finally coming on to be heard after Hon. Francis H. Trimble had become one of the judges of said Kansas City Court of Appeals, on the 5th day of May, 1913, Judge TRIMBLE rendered an opinion in the case (in which Judge ELLISON concurred, but to which Judge JOHNSON dissented), in which the case was reversed and remanded upon the ground, as the opinion which is before us discloses:

"That the record shows the trial court was convinced a new trial should be granted, and also shows that he did not follow his own judgment, but erroneously took the view that he should be governed by the action of the jury in the criminal court. This was error. He had no legal right to substitute the judgment of that jury for his own judgment. The matter before him was one question; the one before that jury

was an entirely different question. The parties were different; the issue was different and the amount, quality and quantity of evidence required by the law was different."

Following the rendition of the opinion in the Iba case by the Kansas City Court of Appeals, this action of *certiorari* was brought for the purpose of reviewing the action of the Kansas City Court of Appeals and of quashing the judgment by them rendered, should it be found by us that the Court of Appeals had in the opinion rendered, failed, neglected or refused to follow the last previous and controlling holding of this court on a matter of law.

We deem this a sufficient statement of the points involved in the controversy before us, but should insufficient light, by reason of lack of facts, be thrown upon the case by the subjoined opinion, other facts may be obtained and the whole case seen at length as reported under the style of Iba v. Chicago, Burlington & Quincy Railroad Co. et al., 172 Mo. App. 141, to which reference, in such contingency, is hereby made.

Under the state of facts recited above we are asked, in the exercise of our superintending control over the several courts of appeals (Section 6, Amendment of 1884, Constitution of Missouri), to quash the judgment rendered by the Kansas City Court of Appeals, pursuant to the opinion handed down in the Iba case, and to direct that court to re-hear said cause and to determine it in accordance with the rulings of this court in the case of Bank v. Porter, 148 Mo. 176; and Mirrielees v. Wabash Railroad Co., 163 Mo. 1. c. 490, and other cases cited, having reference to the time of filing motions for a new trial and of amending same, with which, relator avers, the holding of the Court of Appeals in the Iba case conflicts.

All of the contentions between learned counsel; all of the points of difference strenuously urged in the Kansas City Court of Appeals and now here again

urged in this action, to review the action of that court, are based upon the language used by the learned *nisi prius* court after he had ruled adversely to the defendants' contentions upon the motion for a new trial. Exactly and in his exact words, what the court *nisi* said we have not, nor have we ever had, before us. Something of pith and moment *apropos* to the matter in hand he must have said, if we are to judge of it by the commotion which a bare repetition—a subsequent supplying of it—has raised.

Learned counsel for relator here, who were and are likewise counsel for plaintiff Mrs. Iba, strenuously insist, both in their briefs and in oral argument, that the language used by Judge Rusk has no place in the record; for the reason that, while counsel consented that the words theretofore used by Judge Rusk when he passed upon the motion for a new trial, might be supplied *in writing by the trial court and made a part of the bill of exceptions,* counsel did not consent that the language of Judge Rusk could be supplied by oral dictation to the court stenographer, and transcribed, and thus be carried into the bill of exceptions. We think this view of counsel for the relator is too narrow and technical, under the modern methods of expediting court matters and all other business affairs by dictating that which it is desired to have written to a stenographer, who afterwards transcribes it, and thus does the physical labor of writing a thing but has no part in the mental labor involved in clothing the thought in words. Besides, when Judge Rusk came to sign the bill of exceptions ample opportunity was afforded to him to say that which he intended to say, if he was not correctly reported. We think relator is bound by what Judge Rusk said as a matter of fact; whether or not the time and circumstances under which it was said, give it legal potency is another question. We doubt, however, whether relator is bound upon the strict let-

ter of his agreement by what learned counsel for respondents (who was likewise of counsel for defendants) said in the colloquy which has caused this trouble.

Patent it is, that if what was said by Mr. Phillip, to which the court *nisi* consented merely and perhaps carelessly, is left out of consideration (and most probably even with this regarded) a casual examination of the language of Judge Rusk discloses that he did finally act according to his own first conclusion and judgment as they were made upon his mind by the trial of the case. ''That approaches,'' says Judge Rusk, ''what I said. What I tried to say was this: That in the original trial of this Iba case, if the decision of the case had been left to me, I would have decided for the defendants, *but when the case was ended, I did not feel that the preponderance of the evidence was so greatly in favor of* the defendants as to warrant me in setting the verdict aside.'' What does he here express? Clearly his views before those views were shaken by the extraneous matter of the suggestion with affidavits attached which came into the case some forty-seven days after the trial ended. What does he say he would have done, but for these affidavits? Sustained the verdict evidently, for so he expresses himself when he say: : ''*When the case was ended I did not feel that the preponderance was so greatly in favor of the defendants as to warrant me in setting the verdict aside.*'' When did he change his mind, and what caused the change? Indubitably only upon the filing of the suggestion and affidavits, for he says: ''Afterwards these affidavits were filed against Rise *and that threw such a suspicion in my mind* that I felt constrained *then* to set the verdict aside.'' The inference of perjury arising from the contents of the affidavits, it then clearly appears is what shook the learned court from the view he held when the case was ended. Later, he was driven from this view, inferably—except for the suspicion caused

by the affidavits—back to his original position, by the fact that Rise was indicted for the identical perjury charged in the self-same affidavits which created the suspicion in the mind of the court; tried therefor by a court of competent jurisdiction and acquitted—triumphantly, counsel for relator impresses upon us.

Upon this he felt that the verdict of the jury in the criminal case ought to have such weight as to relieve his mind of the suspicions inserted therein by the affidavits, and that he ought, as a duty made incumbent upon him by law, to respect the verdict of acquittal and give full force and validity to the verdict of the jury in the Iba case. Thus, the learned trial judge having been blown from his course by affidavits filed forty-seven days too late, was blown back thereto by a verdict of acquittal in another case rendered fifty-seven days after the expiration of the time to lawfully file a motion for a new trial. It may be urged that Judge Rusk never was again in a condition of mind to let the verdict stand, when his judgment was not colored by the fact of the affidavits against Rise, or by the verdict of acquittal in his favor; this we must concede, for so his own words advise us: "If I shut the right of these two juries out and get back to my own conclusions, *weighing Rise's testimony as affected by the suspicions that had been thrown in my mind and everything I had learned about the case,* then I would still conclude that the verdict ought to be set aside."

But all of this goes to show that he did not intend to sustain the motion for a new trial till the affidavits were filed, and that his wavering, as he admits it to have existed, was solely and wholly caused by matters occurring long after the trial. That no such condition of mind existed when the motion for a new trial was filed in the Iba case, the court himself says in language which is unmistakable. This is clear even if we give full force and effect to the consent vouchsafed by the

court as to the views of learned counsel for the railroad as *written* by the latter into this colloquy.

If it were not for the excerpt which we quote below and which specifically shows the contrary, we would gather from the whole context of the opinion that the Kansas City Court of Appeals placed a different interpretation upon the language of Judge Rusk from what we here place upon it. We have set out already herein exactly what Judge Rusk said when he supplied the language which he used in passing upon the motion for a new trial. We have tried to analyze this language and give our view of what Judge Rusk meant. However, here is what the learned judge who wrote the opinion of the court in the Kansas City Court of Appeals says Judge Rusk meant to say:

"To put it in another way, the court says: 'If this case had been left to me I would have decided it the other way, and when the case was ended I felt that the *preponderance of the evidence* was with the *defendants,* but it was not *so greatly* in their favor as to warrant me in setting the verdict aside. I felt this way even *before* I knew that one of the witnesses was charged with perjury. *Afterwards,* when these affidavits were filed, *I felt constrained then to set the verdict aside.* But I learn that Rise has been acquitted of perjury by a jury in the criminal court, and *I feel that I ought to respect the verdict of that jury,* and I feel that way *because of my respect for the machinery of courts and trials,* not because my views as to the weight of the evidence have changed. In fact, when I shut out the acquittal of this other jury *and get back to my own conclusions,* weighing Rise's testimony and knowing what I do about the case tried before me, *I still conclude that the verdict ought to be set* aside, but I will not do so out of regard for the trial in the criminal court.'" [172 Mo. App. l. c. 157.]

It will be noted that the learned court yet retains in its analysis of Judge Rusk's position, words which

strike us as controlling, that is to say: *"When the case was ended I felt that the preponderance of the evidence was with the defendants, but it was not so greatly in their favor as to warrant me in setting the verdict aside.* I felt this way even before I knew that one of the witnesses was charged with perjury."

If the view taken by the Kansas City Court of Appeals had disclosed a mistake of facts; had shown, in other words, that the court found that Judge Rusk was of the view even before the affidavits charging perjury were filed and before the verdict of acquittal came in, that the preponderance of the evidence *was so greatly in favor of the defendants as to warrant him in setting the verdict aside,* then a different question would be here. But till these untimely extraneous matters were injected into the case, Judge Rusk intended to let the verdict stand. Everything he said about it so indicates, and from the language used, the Court of Appeals itself so found. If he had set this verdict aside a different question entirely would be before us:

Because, as we read the statute (Sec. 2023, R. S. 1909), great latitude is allowed to the trial court in granting one new trial on the ground of the weight of the evidence. By our holdings, also, we have referred this matter to the sound judicial discretion of the court *nisi,* and have held almost uniformly that the action of the court below in granting a new trial for the reason that the verdict of the jury is against the weight of the evidence will not be disturbed on appeal, unless it appear from all of the evidence in the case that a verdict in favor of the party to whom the new trial was granted would not have been allowed to stand. [Fitzjohn v. St. Louis Transit Co., 183 Mo. l. c. 78; Casey v. Transit Co., 186 Mo. l. c. 232; Warner v. Railroad, 178 Mo. l. c. 129; Haven v. Railroad, 155 Mo. l. c. 229; Hoepper v. Southern Hotel Co., 142 Mo. l. c. 387; Ottomeyer v. Pritchett, 178 Mo. l. c. 165; Herndon v. Lewis, 175 Mo. 116; Ewart v. Peniston, 233 Mo. 695;

Higgins v. Higgins, 243 Mo. l. c. 171.]    But clearly, this statute has no application in a converse sense, that is, if the learned trial court refuse to grant a new trial on this ground or any other urged upon him, it is incumbent upon the appellant to prove to the appellate court, in order to rebut the presumption entertained of right action (State v. Burns, 85 Mo. 47; Finkelnburg and Williams, Missouri Appellate Practice (2 Ed.), p. 149), that error occurred upon the trial, and to prove also, unless we judicially notice it, that the error which occurred was so prejudicial as to require reversal, before reversal will be warranted. [Sec. 2082, R. S. 1909.]

The common law power of a court of general jurisdiction to grant new trials upon the court's own volition, has not been abrogated by any statute in this State. [Standard Milling Co. v. Transit Co., 122 Mo. l. c. 270; Hewitt v. Steele, 118 Mo. 463.] And the courts *nisi* may yet grant new trials in the exercise of their inherent or common law powers, for reasons to be by the court set forth in its order, though such reasons are not urged in the motion for a new trial. The right to grant new trials on the ground of the weight of the evidence has been limited, however, by statute to one new trial on this ground, so that the trial court may not perennially usurp the functions of the jury and substitute the court's judgment for that of the triers of fact upon matters of pure fact. [Sec. 2023, R. S. 1909; Ewart v. Peniston, 233 Mo. l. c. 707.] The right also to grant to the same party more than one new trial on any one issue is limited by statute. [Sec. 1994, R. S. 1909.] As stated, both of these sections are limitations upon the powers of the trial courts, as such powers inhered in courts of general jurisdiction at common law.

So much upon both views being fairly well resolved, did Judge Rusk under the authorities in this State err when he refused to set aside the verdict in

the Iba case? We think not. To us nothing is clearer than that he did not have the intention to set aside the verdict till affidavits were filed attacking the witness Rise, for that, as it was charged, he had perjured himself upon the Iba trial. Shaken, however, as we say above in another figure, from his judicial plumb by the suspicions thus thrown into his mind, he never regained exactly the attitude toward the case which he had held "when the trial was ended." If the method of his being shaken from his original view had been a lawful and proper one, we would not hesitate to say that he was not warranted by law in harking to the verdict of the trial jury in the criminal case. This verdict in the criminal trial was not binding upon him as a rule of decision in the matter of determining whether Rise had perjured himself upon the trial of the Iba case.

But Judge Rusk was not of the opinion that he ought to set aside the Iba verdict till his mind was poisoned by suspicions created therein by extraneous matters thrust into the case forty-five days after the time to file a motion for a new trial, or an amended motion for a new trial, had expired. If he had been in such mind till then, or even if the learned Court of Appeals had found that he was till then in such mind, we would not rule here as we shall, for reasons ultimately herein to be set out.

The case indubitably turns on the single question applied to the facts in judgment: Is a trial court compelled to consider matters and things urged in a motion for a new trial filed out of time? We have seen that he may do so; that he might have granted a new trial in this identical case and kept well within his rights. But are we to convict him of error because he refused to be moved to exercise his judicial discretion to grant a new trial by such matters so untimely filed, even though the doubt in his mind was likewise resolved by the consideration of a matter legally forbid-

den to be considered? We think not, though we keenly perceive how nearly the periphery of this view is tangent to the views expressed in the learned opinion of the Court of Appeals. He ought, we think, to be governed in the exercise of his discretion in this behalf by judicial reasons and by the law as it moves in its usual and recognized channels. He ought not to act arbitrarily, or be moved by holding a private primary election, or be governed by auguries, as the Romans were by the flights of birds, or foretell the legal propriety of a new trial by the thickness of the corn-husks, as rural weather prophets forecast the coming of a hard winter. So, by *reductio ad absurdum*, we try to make clear the point in mind.

Whatever the rule may be in other jurisdictions, it is well-settled that in this State neither a motion for a new trial, nor an amended or supplemental motion for a new trial, may be filed after the expiration of the four days fixed by statute (Sec. 2025, R. S. 1909); nor may a motion timely filed be amended in matter of substance after such time has elapsed. [Bank v. Porter, 148 Mo. 176; Mirrielees v. Wabash Railroad Co., 163 Mo. 470; Bank v. Bennett, 138 Mo. 494; State v. Dusenberry, 112 Mo. 277.] Upon this identical point this court in the case of Bank v. Porter, 148 Mo. 1. c. 183, said:

"Section 2243, Revised Statutes 1889, provides that 'all motions for new trials and in arrest of judgment shall be made within four days after the trial, if the term shall so long continue; and if not, then before the end of term,' and is clearly mandatory, leaving no discretion whatever in the court with respect to the time of filing such motions. Nor does it make any exception upon the ground of newly discovered evidence, or anything else which may occur or be discovered after the expiration of the time fixed thereby in which the motion is required to be filed. The merit of such a motion with respect to its filing has nothing

to do with it. Whether meritorious or otherwise, it must be filed within the prescribed time. [State v. Brooks, 92 Mo. 542; Maloney v. Railroad. 122 Mo. 106; City of St. Joseph v. Robinson, 125 Mo. 1.]''

That which was offered to the trial court in the Iba case by way of *suggestion* and affidavits, forty-five days after the time to file a motion for a new trial had expired, was newly discovered evidence. No more and no less. The nature of it cannot be glozed over by calling it ''a suggestion.'' The defendants in the Iba case may not accomplish by indirection that which they could not do directly. By statute the court is expressly authorized to grant a new trial if the court is satisfied that perjury has been committed upon the trial (Sec. 2022, R. S. 1909), but side by side with this section is the further provision, that ''all motions for new trials and in arrest of judgment shall be made within four days after the trial.'' [Sec. 2025, R. S. 1909.]

We conclude that Judge Rusk had no legal right to consider either the suggestion and affidavits filed by the defendants forty-five days out of time, or the papers showing the acquittal of Rise, filed fifty-seven days out of time. He ought not under the facts to have considered these for any purpose in the Iba case, because they were all untimely filed. That since Judge Rusk was convinced before the affidavits attacking Rise were filed that ''*the preponderance of the evidence was with the defendants, but not so greatly in their favor as to warrant him in setting the verdict aside*,'' no error meet for reversal may be based upon the fact that his views on the question of the weight of the evidence were temporarily shifted by extraneous matters injected into the case in an untimely and illegal way and long after it was tried. Having no legal right to be swayed by this suggestion and the affidavits, it makes no difference that his views may later have undergone another change on account of other illegal and untimely extraneous matters which he permitted him-

self to consider. All of the difficulties which we see in the case; the sole and single error found by the Court of Appeals, and most of the errors urged by appellant for a reversal of the Iba case, came into it for the first time some six weeks after it was tried.

We repeat, that if the learned judge who wrote the opinion in the Court of Appeals had found that Judge Rusk was at the end of the trial in the Iba case of the opinion that the verdict therein should be set aside because it was against the weight of the evidence, then no valid objection to his views could be urged, and while opinions might differ as to the correctness of such view of the facts upon this record, yet no ground for jurisdiction in us by *certiorari* would have existed; because the error, or difference in view, would then have arisen upon a question of fact. On such a question, in cases wherein they have jurisdiction, the several courts of appeals have the same right to decide, even erroneously, as we have, and we may not interfere in any wise, whether in our judgment their opinion be right or wrong. Upon a point of law arising from undisputed facts, they are required to follow the last previous ruling of this court. [Section 6, Amendment of 1884, Constitution of Missouri.] If they do not we have held that a judgment rendered by them in contravention of the constitutional mandate above referred to may be quashed by us upon *certiorari*. [State ex rel. v. Broaddus, 238 Mo. 189; Curtis v. Sexton, 252 Mo. 221.] The rule last announced is so recent, that we may be pardoned for refusing to again discuss it, though counsel for respondents urge the error of this view upon us.

Upon the argument of this case I was of the opinion that our writ of *certiorari* issued herein should be quashed and that the judgment of the Court of Appeals in the Iba case should not be disturbed. But upon an examination of the authorities and a careful reading of the record in the instant case, as well as in the Iba case, I have been forced to revise my views as first

held, even against my own mental striving to see the case the other way.

It follows that since the opinion rendered by the Kansas City Court of Appeals on May 5, 1913, in the case of Mary Iba v. Chicago, Burlington & Quincy Railroad Company et al., is contrary to the last previous rulings of this court as expressed in the cases of Mt. Vernon Bank v. Porter, 148 Mo. 176, and Mirrielees v. Wabash Railroad Company, 163 Mo. 470, that the judgment based thereon should be quashed and for naught held and that said cause should be remanded to that court to be retried by it and determined in conformity with the views announced herein. It is so ordered. *Lamm, C. J., Graves, Brown* and *Walker, JJ.,* concur; *Woodson, J.,* dissents in separate-opinion in which *Bond, J.,* concurs.

## DISSENTING OPINION.

WOODSON, J.—I dissent from the opinion written by my learned brother Faris in this case, for the reasons stated in my dissenting opinion written in the case of State ex rel. v. Broaddus, 238 Mo. l. c. 230.

With all due respect for my learned associates, I am of the opinion that the assumption of jurisdiction in this case, by this court, is a clear usurpation of authority.

This opinion, as well as the one upon which it is based, clearly eliminates section 6 of the Amendment of the Constitution in the year 1884, page 101 of Volume I of the Revised Statutes of 1909; which amendment created the Kansas City Court of Appeals, and said section 6 clearly limits the jurisdiction of this court in reviewing the judgments of that court. This case clearly does not come within the pale of that section, which has uniformly been the ruling of this court in some fifty odd cases, extending over a period of almost a third of a century, long before some of us began the practice of law.

In the dissenting opinion mentioned, this amendment is considered, and many of the rulings of this court upon this proposition are cited and reviewed; every one of which clearly holds that this court has no jurisdiction of this, or this class of cases.

In those cases, not only was section 3 of article 6 of the Constitution, the section upon which my learned brother's opinion in this case is based, considered, but said section 6 of the Amendment was considered along with it. The latter clearly qualifies the former, as this court has held, as previously stated, in some fifty-odd cases.

Moreover, said section 3 gives this court superintending control over all inferior courts, such as the county, probate and circuit courts, as well as over the courts of appeals.

Now, if the majority opinion is sound law, then this court could with much stronger reasons assume jurisdiction over and review errors of those courts by *certiorari*, or some one of the original writs mentioned in said section, than those assigned for assuming jurisdiction over the errors of the courts of appeals. Yet, who for a moment, would seriously contend for such an absurd proposition?

My reason for this statement is, that in so far as the courts of appeals are concerned, said section 6 of the Amendment expressly limits the jurisdiction of this court over the courts of appeals as provided for in said section 2, in the manner as stated in the numerous cases previously mentioned, while as to the county, probate and circuit courts, no such limitation is provided for.

Notwithstanding that, this court has assumed jurisdiction to review the errors of the courts of appeals where no member thereof would dream of reviewing the errors of the other courts mentioned by original writ, but would confine its investigation and rulings to questions of their jurisdiction only.

But independent of that, the assumption of jurisdiction by this court, over the ruling of the various courts of appeals, as to matters of error, will practically destroy their efficiency by subjecting their opinion to removal, and review by this court. It will also largely destroy the efficiency of this court, by lifting that floodgate and pouring into this court any and all cases any one of the thousands of attorneys may desire to bring to this court for review. Even though a majority of the writs applied for should not be issued, which would be contrary to the present practice of this court, in that respect, yet the time which would be necessarily consumed in determining whether or not they should be issued, would take a large part of the remaining time of this court, one-half or more of which is already taken up with original writs and Banc cases, which at our last call numbered about seventy-five.

In the light of these facts, when and where will the rights of ordinary litigants who appeal their cases or who bring them by writs of error to this court and the various courts of appeals, be determined?

*Bond, J.,* concurs herein.