Peter PIPPAS (Plaintiff), Respondent,

v.

Irene PIPPAS, a Minor, by Arthur Litz, Guardian ad litem (Defendant), Appellant.

No. 30194.

St. Louis Court of Appeals. Missouri.

Dec. 15, 1959.

Rehearing Denied Jan. 12, 1960.

Charles A. Lee, Jr., St. Louis, for defendant-appellant.

Claude W. McElwee, Sam Hatupin, St. Louis, for respondent.

DOERNER, Commissioner.

This case involves an appeal by the defendant, Irene Pippas, from a judgment granting a divorce to the plaintiff, Peter Pippas, and awarding plaintiff the custody of their minor child, James.

The parties involved were married on April 24, 1955, in Athens, Greece, at which time they both resided in that country. However, because of the service of defend-

ant's father in the United States Army, defendant was a citizen of this country, and was thereby enabled to enter the United States on November 2, 1955, and to have her husband, a non-citizen, accompany her. Funds for the trip were supplied by James Pappas, plaintiff's uncle, who resided at 3952 North Kingshighway in St. Louis. After short visits with defendant's sister, in Buffalo, and with plaintiff's relatives in Canton, Ohio, and Detroit, Michigan, the couple came to St. Louis, where they lived with Mr. and Mrs. James Pappas at the Kingshighway address. After about nine months plaintiff and defendant moved to an apartment at 5523 Waterman Avenue. Their child was born at Jewish Hospital on April 25, 1957, while they were living at the Waterman address. About three months later they moved to a seven room flat at 4876 Farlin Avenue, where they resided in May, 1957, when their separation occurred.

In addition to defraying the expenses of the parties' journey to the United States, and of furnishing them room and board while they lived in his home, plaintiff's uncle, James Pappas, paid the rent of the furnished apartment on Waterman, subsequently allowed them to live rent free in his property on Farlin Avenue, and otherwise supplied much of their support. Neither plaintiff or defendant could speak English on their arrival from Greece, and at the urging of Mr. Pappas they attended night school, first at Roosevelt High School and later at Soldan High School, in an effort to learn the language and to qualify plaintiff for citizenship. Plaintiff had no skill and trade, and worked only briefly—first at a restaurant as a bus boy, for $22 a week, and later as a porter at an electrical company, where he earned $1.00 an hour. When that employment terminated after one month plaintiff went to work for his uncle in the latter's tavern at 519 Pine Street, St. Louis, as a porter and handy man, for which he was paid $25 per week.

This suit was instituted on September 10, 1957. On December 13, 1957, defendant filed a motion for alimony pendente lite, suit money and attorney's fee. After one continuance, testimony in support of defendant's motion was heard on March 6, 1958. At the end of the hearing on that day the trial judge stated that it was his opinion the defendant was not entitled to alimony pendente lite, and announced that he would take the matter as partially heard and continue the case until March 17. The transcript filed with us shows that on March 17, 1958 defendant filed her motion for a change of venue, alleging therein that she could not have a fair and impartial trial " * * * for the reason that the Judge of said Court is biased and prejudiced, for the reason that the Judge of said Court has informed the attorney for the defendant herein, Irene Pippas, that defendant is not entitled (as amended) to alimony pendente lite and child support. Your petitioner further states that her attorney obtained such information and knowledge on the 13th day of March 1958, on the east steps of the Civil Courts Building * * *." This motion was verified by the customary affidavit, made by defendant's counsel. There seems to be a conflict in the transcript as to the day upon which the trial court overruled defendant's motion for a change of venue. The minute entry shows that it was overruled on March 17, 1958, the day upon which it was filed and heard, and is the only minute entry relating to the overruling of the motion. However, in the reporter's notes of the proceedings the trial judge is quoted as stating that he indicated he was going to overrule the motion, whereupon counsel for defendant sought and obtained a delay of nine days for the purpose of applying to this court for a writ of prohibition. (Which, we note from our records, was not done.) So far as the question presented is concerned, it makes no difference whether the motion was overruled on March 17, 1958, or at a later date.

■■ Defendant contends that the trial court erred in overruling her motion for a change of venue, for the reason that it was mandatory upon the trial court to grant the motion. It is true, as defendant argues, that

it is imperative upon the court to grant a change if the application therefor is in substantial compliance with the applicable statutes. Douglass v. White, 134 Mo. 228, 34 S.W. 867; Ralston v. Ralston, Mo.App., 166 S.W.2d 235. However, questions as to the timeliness of the presentation of the application, adequacy of the notice, and sufficiency of the application itself as to substance and form are addressed to the sound discretion of the trial court. Douglass v. White, supra; Thompson v. Sanders, 334 Mo. 1100, 70 S.W.2d 1051; Ralston v. Ralston, supra. The pertinent statute upon which defendant based her application, Sec. 508.090 RSMo 1949, V.A.M.S., prescribes only the minimum which must be alleged and sworn to by the party who makes the application. La Grange Elevator Co. No. 111 v. Richter, Mo.App., 129 S.W.2d 22. That case holds that where the applicant sees fit to allege and swear to more than the minimum required by the statute, he is entitled to the benefit of the stronger language so long as it includes the statutory allegations. By the same token, it seems to us, an applicant should be bound by any allegations made in his application which are in addition to the minimum contemplated by the statute. Such is the rule in other areas of the law. Frye v. Baskin, Mo.App., 231 S.W.2d 630; Usona Mfg. Co. v. Shubert-Christy Corp., Mo.App., 132 S.W.2d 1101.

■ In this case defendant chose to allege that the trial judge was biased and prejudiced " * * * for the reason that the Judge of said Court has informed the attorney for the defendant herein, Irene Pippas, that defendant is not entitled to (as amended) alimony pendente lite and child's support for the minor child herein." In reaching that tentative opinion before he had passed on defendant's motion for alimony pendente lite and child support as a matter of record the trial judge was exercising a judicial function. In Browder v. Milla, Mo.App., 296 S.W.2d 502, 507, 508, this court said:

"Of necessity, as a jury waived trial progresses, a trial judge must consider and possibly formulate tentative opinions concerning such matters as the probative value of certain testimony, the credibility of certain witnesses, what law should govern particular issues inherent in the trial, and finally must decide who, if anyone, is entitled to prevail therein on the law and the facts. In so doing he is exercising his judicial trial function, and although while so doing he may commit legal error or be mistaken as to his conclusions of law or fact, he is not as a result to be successfully charged with prejudice within the meaning of Section 508.090 RSMo 1949, V.A.M.S., so as to entitle the aggrieved party to a change of venue. The proper remedy for such situations ordinarily is for the aggrieved party to take an appeal. We hold that the application for change of venue was properly denied."

If defendant was of the opinion that the trial court erred in overruling her motion for alimony pendente lite her proper remedy was to take an appeal, as she was entitled to do in such a proceeding. Noll v. Noll, Mo.App., 286 S.W.2d 58. But as was said in Browder v. Milla, supra, the trial judge could not be successfully charged with prejudice within the meaning of Section 508.090 because he exercised his judicial trial function, and the application for change of venue was therefore properly denied.

Turning to the merits of the case, there was an abundance of evidence to support plaintiff's allegations as to the indignities pleaded. In brief, there was testimony that defendant absented herself at all hours from the Pappas home where they were then staying, and that she would refuse to account to plaintiff as to where she had been; that at other times she would receive telephone calls and would then go

out alone, return very late, and decline to tell plaintiff with whom she had been; that she refused to walk to school with plaintiff, and insisted on walking on the other side of the street from him; that she would leave the classroom and associate with young men in the hallways at school, over the protest of the plaintiff; that plaintiff found defendant in a compromising position in the hallway of the school with one young man, causing a fight to ensue between plaintiff and the young man; that she was neglectful of her household duties and the care of their child; that she threw dishes, glasses and other objects at plaintiff and around the house; that she was critical of the clothes and homes which plaintiff's uncle furnished for her; that she refused to enter into the festivities which customarily follow the christening of a child of Greek parentage, which in the parties' case was held in Canton, Ohio, embarrassed the plaintiff and resulted in the curtailment of the celebration; that following the end of the party defendant refused to accompany plaintiff and their baby to the hotel where they were staying, disappeared, and did not return to their home in St. Louis until some days later; and that after the parties had separated, but before this suit was filed, defendant met and dated a man named Ray Dougan. The extent of their association was a matter of sharp dispute. It is sufficient to say that defendant testified she had seen Dougan on only three occasions, and had never gone out on a date with him. However, when defendant put Dougan on the witness stand to deny plaintiff's evidence that he had been in a motel room with defendant, Dougan admitted on cross-examination that he had had at least three or four dates with defendant, and that he had embraced and kissed her on more than one occasion.

Defendant denied and contradicted most if not all of the charges leveled against her, and complained in turn in her cross-bill and testimony that plaintiff had failed to furnish her clothing or to take her to places of amusement; that plaintiff struck her; that he was cold and indifferent, and that he abandoned her. She freely admitted that the parties had fought from the first day they arrived in this country, and when asked by the trial court stated that she no longer loved plaintiff and wouldn't live with him again if the court denied a divorce to both of them.

◼◼ While we try a case of this kind de novo, and have the duty and responsibility to reach our own conclusions from a review of the evidence, Clemens v. Clemens, Mo., 235 S.W.2d 342; Bassett v. Bassett, Mo.App., 253 S.W. 112, reversed Mo., 280 S.W. 430, where there are contradictions and a sharp conflict in the evidence we recognize and adhere to the rule of deference, since the trial court had the opportunity to see and hear the witnesses. Clemens v. Clemens, supra; White v. White, Mo.App., 312 S.W.2d 167; Schneider v. Schneider, Mo.App., 293 S.W. 2d 157. No doubt defendant's contradiction by her own witness, Ray Dougan, was taken into account by the trial court in reaching its decision. Accepting, then, the plaintiff's version of the facts, we are of the opinion that defendant's breaches of marital duty were indignities within the contemplation of Section 452.010 RSMo 1949, V.A.M.S.; White v. White, supra; Schneider v. Schneider, supra.

◼ Defendant next contends that plaintiff was not the injured and innocent party and that the trial court should therefore have denied him a divorce. It is argued that plaintiff abandoned the defendant; that plaintiff failed to support the defendant and their child after the separation; and that the uncontradicted evidence showed that plaintiff had struck the defendant on two occasions. Defendant disregards plaintiff's evidence that after defendant's return from the christening at Canton he tried to live with defendant and that she refused to permit him to do so and threatened to kill him in his sleep if he stayed. Since plaintiff attempted to resume cohabitation with defendant, who refused

to permit him to do so, plaintiff cannot be charged with desertion or abandonment. Tarrant v. Tarrant, 156 Mo.App. 725, 137 S.W. 56.

■ As to the complaint of non-support, defendant admits that such a failure is not of itself a ground for divorce, citing Lowe v. Lowe, Mo.App., 229 S.W.2d 7, which holds that evidence of that fact can only be considered along with other evidence when general indignities are relied on for relief. Such other evidence is lacking here. Furthermore, while plaintiff's contributions were by no means generous, or even adequate, it was shown that during part of the period involved the defendant was furnished free rent by plaintiff's uncle; that she left the Farlin Avenue address and disappeared for a part of the time, and that plaintiff was required to employ a detective to locate her; that she herself was employed most of the time; and that for another period the child resided with the plaintiff. One seeking a divorce is not required to conclusively prove freedom from all fault, but only that, under all of the circumstances of a particular case, he has not been guilty of conduct constituting a ground or grounds for divorce under Section 452.010 RSMo 1949, V.A.M.S.; Simon v. Simon, Mo., 248 S.W.2d 560; Chapman v. Chapman, Mo.App., 230 S.W. 2d 149. Plaintiff sustained his burden of proof in the instant case.

■ In contending that the uncontradicted evidence showed that plaintiff had struck the defendant on two occasions, defendant likewise ignores plaintiff's evidence. Plaintiff specifically denied that he had hit defendant on the first occasion charged. When asked about the second instance, he answered that he was holding the baby; that defendant grabbed the child and pitched it onto the bed; that defendant also threw the toaster at him; and that there was a misunderstanding and cussing going on because he reprimanded her about the way she was handling the baby. We construe this answer as a denial that plaintiff struck defendant.

■ The defendant charges that the trial court erred in admitting in evidence, over the defendant's objection of privilege, testimony of conversations between plaintiff and defendant which did not take place in the presence of a third party. Oliver v. Oliver, Mo.App., 325 S.W.2d 33. Whatever error may have been committed in this regard by the trial court would not be a ground for reversal since, this being in the nature of an equity suit, we consider on appeal only such evidence as is admissible to determine whether there was sufficient admissible evidence to support the judgment. Johnson v. Johnson, Mo.App., 240 S.W.2d 184.

In her motion for a new trial defendant alleged, among other grounds, that she was entitled to a new trial because of newly discovered evidence as set forth in Exhibit A attached to her motion. The exhibit referred to consisted of an affidavit of William F. Spradling, the husband of Ruth Ann Spradling, one of plaintiff's witnesses, in which he contradicted various portions of the testimony of his wife, including Mrs. Spradling's testimony that she and the affiant had occupied one motel room, and defendant and Ray Dougan another, for a period of about two hours, in October, 1957. In addition, counsel for defendant also filed his own affidavit in which he stated that he had used "due diligence to procure and discover all the witnesses and the substance of their testimony"; that it was not known until the time of trial that Ruth Ann Spradling would testify, nor could the nature of her testimony be anticipated; and that since the trial it has been learned that William F. Spradling, who was stationed at Fort Leonard Wood at the time of trial, would rebut the statements of his wife, as shown by his affidavit.

■ Motions for a new trial on the grounds of newly discovered evidence are not favored, and should be examined with

caution. Arnold v. May Department Stores Co., 337 Mo. 727, 85 S.W.2d 748; Gromowsky v. Ingersol, Mo.App., 241 S.W.2d 60. The granting or refusing of a new trial on such grounds rests largely in the discretion of the trial court, with whose action an appellate court will not interfere unless an abuse of discretion is shown. Arnold v. May Department Stores Co., supra; Smith v. Smith, Mo.App., 267 S.W.2d 704. Among other facts which an aggrieved party must show, in seeking a new trial on the grounds of newly discovered evidence, are (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to his want of diligence that it did not come to his knowledge sooner; and (3) that it is not merely cumulative. Lynch v. Baldwin, Mo., 117 S.W.2d 273; Deacon v. City of Ladue, Mo.App., 294 S.W.2d 616. Defendant was aware before trial that Ruth Ann Spradling was to be a witness for plaintiff, for she admitted that she had asked Mrs. Spradling if she was going to testify against her, and an inference may be drawn from defendant's testimony that she had seen Mrs. Spradling in court on a prior setting of the case. According to Mrs. Spradling, the defendant told her to go ahead and be a witness, but to get paid by plaintiff's uncle to do so. There is no showing that defendant or her counsel sought, before trial, to obtain the substance of Mrs. Spradling's possible testimony, by interview or deposition. Furthermore, the whereabouts of William R. Spradling were made known fairly early in the trial, he was amenable to process, and his appearance could have been obtained, if desired. And lastly, both defendant and Ray Dougan contradicted Mrs. Spradling's testimony as to the motel incident, so that the evidence of William R. Spradling would have been merely cumulative. For these reasons the trial court did not abuse its discretion in overruling defendant's motion.

■ We come, then, to defendant's final assignment of error, that the trial court erred in awarding custody of the parties' child to plaintiff. The determination of this question has been aptly described as "a most serious and trying problem" in a sympathetic and understanding discussion of this ever-perplexing question. Paxton v. Paxton, Mo.App., 319 S.W.2d 280, 287. The guides used by the courts in reaching their conclusions are there set forth and ably discussed. Paramount among these is the rule that the fact that either party prevails is not the determining factor in awarding custody; the determinative factor is the best interests and welfare of the child. McKenzie v. McKenzie, Mo.App., 306 S.W.2d 588. Mrs. George Mitsunaga, a registered nurse, with whom (and Mr. Mitsunaga) defendant at first boarded and by whom she was later employed during the period from August 23, 1957 to March 29, 1958, testified that defendant was an efficient worker, eager to learn; that defendant took very good care of the child; that Jimmy was well-disciplined, healthy, and gained weight during the time the defendant and the child were in her home; and that she considered defendant a good mother. Mrs. Cleo VanBever, who stayed in the Mitsunaga home during part of the same period, supported this testimony and testified that defendant gave the child motherly love and care. Defendant terminated her employment with the Mitsunagas to begin work for Mr. and Mrs. Harvey B. Cox, Jr., and was employed by them at the time of the trial. Mrs. Cox described Jimmy as a very happy baby, well-adjusted, and very good, and defendant as an efficient worker and a good mother.

The evidence showed that the three-floor home of Mr. and Mrs. Harvey B. Cox, Jr., in which defendant was employed as a housekeeper at the time of the trial, is located on Highway 141 in Fenton, Missouri; that the defendant and Jimmy have their own room and bath, and that they have their meals with Mr. and Mrs. Cox; that in addition to the room and board furnished her, defendant receives wages of

$50.00 per month; and that Mr. and Mrs. Cox would continue to employ defendant as long as her services were satisfactory.

Plaintiff apparently has made little effort to improve his status since entering this country, for after two and a half years he still knew little or no English, and had been unemployed and drawing unemployment compensation since February 20 or 22, 1958. He had no immediate prospects of a job, was dependent upon the bounty of his uncle, and stated that if awarded the custody of the child his uncle and aunt would provide a home for Jimmy. Both expressed a willingness to care for the child if custody was awarded to plaintiff. Mr. and Mrs. Pappas live in a three-bedroom residence, and have plaintiff and Mrs. Pappas' sister residing with them. Mr. Pappas operates a tavern at 519 Pine Street in St. Louis. Apparently while Mr. Pappas has always operated the tavern the liquor license was first issued to his wife, Irene. This license was revoked on December 20, 1940, for violation of the closing provisions and for permitting female employees, commonly called B-girls, to solicit drinks from patrons. Since then the license has been in the name of the uncle. Mr. Pappas testified that because of plaintiff's lack of familiarity with the English language plaintiff made customers of the tavern mad when he tried to serve them, resulting in two arrests, both charges later being dropped. Some insight into Mr. Pappas' feeling toward both his nephew and defendant is furnished by his statement, volunteered at the end of his cross-examination, that he would like to send both of them back to Greece that night.

At the time of the trial in April 1958, Jimmy was about eighteen months old, and had been in the custody of his mother from the time of the separation in May, 1957, except for the period from August to Christmas, 1957, when he lived with plaintiff in the home of Mr. and Mrs. James Pappas. He is still a very young child, and while the rule is not an inflexible one, the courts are justifiably inclined to feel that the proper place for minor children is with their mother. Oliver v. Oliver, Mo. App., 325 S.W.2d 33; Bedal v. Bedal, Mo. App., 2 S.W.2d 180. Whatever may have been her earlier conduct, we believe that the evidence amply supports the conclusion that the defendant is now giving Jimmy the love and care which a child of his tender years requires. Her obvious efforts to support him and herself are commendable. Considering all of the circumstances of this case, we are convinced that the best interests of the child dictate that his custody should have been awarded to his mother.

As the economic status of the parties, and particularly that of the plaintiff, may have changed since the appeal was taken, and the question of the extent of plaintiff's temporary custody is one on which additional evidence may also be required, it is the Commissioner's recommendation that all of the judgment be affirmed except those portions awarding custody of the minor child, James, to plaintiff and temporary custody to defendant during certain periods of each month, which portions should be reversed; that the cause be remanded to the trial court with directions to enter a judgment and decree awarding the care and custody of said minor child to defendant; and that the trial court be further directed to take such further proceedings as may be necessary to determine, and to enter a judgment and decree, regarding plaintiff's obligation for the support and maintenance of said minor child and the extent of plaintiff's reasonable temporary custody of said child.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, judgment is affirmed in part and reversed in part and cause remanded to trial court with directions.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.