**Elmer WOMACK, a minor, by Thomas O. Womack, his next friend, and Thomas O. Womack, Respondents,**

v.

**Raymond McCULLOUGH, Appellant.**

No. 49102.

Supreme Court of Missouri,

Division No. 2.

June 11, 1962.

———◆———

Wangelin & Friedewald, Poplar Bluff, for appellant.

Philip S. Terry, Poplar Bluff, for respondents.

EAGER, Presiding Judge.

This is an appeal by defendant from an order granting plaintiffs a new trial on the ground of newly discovered evidence, after a verdict for the defendant. The suit is one by a minor and his father for personal injuries and expense resulting when defendant's car struck the minor, while he was riding a bicycle. The amount prayed in the first count for personal injuries was $20,000,—in the second count, $5,000. The facts may be stated rather briefly.

The injury occurred on Sycamore Street, where it runs along the east side of the square in Van Buren; the date was August 3, 1960. The defendant and his passenger, Roy Mead, were produced as witnesses by the plaintiffs. They testified in substance that they were driving home from work, that they stopped at the northeast corner of the square, and there turned south; that they were driving on their own (right) side of the street, southwardly, when they saw plaintiff [1] on his bicycle in front of, or practically in front of, the radiator of the car. Roy Mead, the passenger, said plaintiff was "about five feet from me" with his hand reaching toward the hood, when he first saw him; defendant said "his hand was right in front of the radiator," and that he could not have been over three or four feet away. The plaintiff had evidently ridden into the street from the west side (where the courthouse was) and was turning south, although no one who testified saw him enter the street. There was a walk or entrance running to the courthouse from the street at that point. Defendant did not swerve, but there was evidence that he did slow his vehicle before the impact and that he was traveling at about ten miles an hour at that time. It was also shown that there was a car parked on the west side of the street extending to a point perhaps three feet from the courthouse walkway. The impact occurred on the right or east half of the street, apparently about at the center of that side. An officer who came to the scene found bicycle skidmarks and blood at a point about twelve feet south of the south edge of the courthouse walkway entrance, and (at the closest point) fifty inches from the right (east) edge of the pavement. He also testified that the bicycle, minus a few parts which had been knocked off, was sixty feet from the south edge of the courthouse walkway or entrance. The car went over the boy. While it was not directly shown, there seems to have been a reasonable inference that the boy rode east out of the courthouse entrance into the street, and that he was turning south. He sustained serious injuries, from most of which he recovered; it will not be necessary to detail these. Defendant was charged in the petition with several assignments of primary negligence, as well as with humanitarian negligence; defendant pleaded contributory negligence; the case was submitted solely on humanitarian negligence in failing to slacken and turn. As already stated, the jury found the issues for the defendant.

The sole ground of plaintiff's motion for new trial was as follows: "Because there is evidence concerning the accident wherein Elmer Womack was injured that was not known to or available to plaintiffs at the trial held on June 14th, 1961; that one Everett Windes saw said accident and will

[1]. Where the word "plaintiff" is used in the singular it will refer to Elmer Womack, the minor.

testify at another trial that the said Elmer Womack was from ten to twelve feet from the entrance of street to side walk going to the courthouse when stricken by the automobile being driven by defendant; that the child was driven at least fifty feet by said automobile." This motion was signed by plaintiff's attorney and by Thomas O. Womack, the father; it was also "Subscribed and sworn to" before Mr. Searcy, the attorney, as a Notary Public, presumably by Thomas O. Womack. No separate affidavit was filed with the motion.

■ At the hearing on the motion for new trial plaintiff offered and the court received, over objection, an affidavit of Everett B. Windes made six days after the motion for new trial was filed. Therein the affiant stated that he was in his office on the east side of Sycamore Street on the afternoon in question, and that: "I did see a 1950 model Ford car going South on Sycamore St. some 12 to 15 feet south of Court square entrance, where same car did strike boy on bicycle. The car did not stop immediately when it struck the boy and bicycle. The same car moved south on same street 50 to 60 feet, then the car stopped. I did see the boy partly under back part of the car, after the car had stopped. The boy was some 30 to 35 feet south of court square entrance when the car stopped." On the basis of the motion and that affidavit the trial court set aside the verdict and granted a new trial. The order was made on the ninetieth day after the motion was filed, so the new trial cannot be considered as one granted of the court's own motion.

■■ Certain principles concerning the granting of new trials because of newly discovered evidence are well fixed in our law. That ground for a new trial is not ordinarily favored, and the motion is viewed with caution. Pippas v. Pippas, Mo.App., 330 S.W.2d 132; E v. G, Mo.App., 317 S.W. 2d 462; Devine v. Wells, 300 Mo. 177, 254 S.W. 65. And, as stated in Young v. St.

Louis Public Service Co., Mo., 326 S.W.2d 107, at loc. cit. 111: "It is well settled that a party who seeks a new trial on such ground should (to obtain such relief) be required to show: (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that it did not come sooner; (3) that it is so material that it would probably produce a different result if the new trial were granted; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be produced, or its absence accounted for; and (6) that the object of the testimony is not merely to impeach the character or credit of a witness. State v. McLaughlin, 27 Mo. 111, 112; Sang v. City of St. Louis, 262 Mo. 454, 171 S.W. 347, 351; Devine v. Wells, 300 Mo. 177, 254 S.W. 65, 68; Browhaw v. Dowd, Mo. App., 187 S.W.2d 29, 30; Hayes v. Adams, 241 Mo.App. 560, 244 S.W.2d 123, 127." To these citations sundry others might be added, including the recent cases of Pippas v. Pippas, supra, and Fidelity and Casualty Co. of New York v. Western Casualty & Surety Co., Mo.App., 337 S.W.2d 566. On the other hand, as plaintiffs' counsel argue here, the trial court is generally permitted a very broad discretion in such matters and only where an abuse clearly appears should the appellate courts interfere. Devine v. Wells, 300 Mo. 177, 254 S. W. 65; Young v. St. Louis Public Service Co., Mo., 326 S.W.2d 107; Arnold v. May Department Stores Co., 337 Mo. 727, 85 S.W.2d 748. But, as said in E v. G, Mo. App., 317 S.W.2d 462, loc. cit. 468, 469: "Before a party has a right to call upon the discretion of the court in this respect he must have brought himself strictly within the requirements which have been laid down for such a motion." The discretion which a trial court may exercise is to be directed at questions of fact or, perhaps, mixed questions of fact and law. There is no discretion permitted in the interpretation of a strict question of law, Devine v. Wells, 300 Mo. 177, 254 S.W. 65; and this includes those cases where there is an entire absence

of evidence or allegation to establish a question of fact on any given point.

■ Ordinarily the motion for a new trial should set out the proposed evidence in some detail, so that its materiality and effect, i. e., whether merely cumulative or material and decisive, may be factually determined. E v. G, supra; Grubbs v. Kansas City Public Service Co., 329 Mo. 390, 45 S.W.2d 71; King v. Gilson, 206 Mo. 264, 104 S.W. 52; Young v. Levine, 326 Mo. 593, 31 S.W.2d 978. The motion should be supported or accompanied by some form of proof of the facts, either within itself or by accompanying affidavits. George v. Kansas City American Ass'n Baseball Co., Mo. App., 219 S.W. 134, 135; Fidelity and Casualty Co. of New York v. Western Casualty & Surety Co., Mo.App., 337 S.W.2d 566, 574; Devine v. Wells, 300 Mo. 177, 254 S.W. 65. And, at least by the better practice, facts showing diligence should be stated either in a verified motion or in an affidavit accompanying the motion. Devine v. Wells, 300 Mo. 177, 254 S.W. 65; Arnold v. May Department Stores Co., 337 Mo. 727, 85 S.W.2d 748, 756.

■ The only evidentiary facts alleged in the present motion are that the minor plaintiff was 10–12 feet from the entrance to the courthouse when struck, and that he was driven "at least 50 feet." These facts, if true, would be largely cumulative and it is, at best, extremely doubtful that such testimony would "probably produce a different result." Assuming that the affidavit of Windes might have properly been received, the statements therein were substantially the same as those in the motion, with an added statement concerning the location of the boy, "partly under back part of the car, * * * some 30 to 35 feet south of the court square entrance * * *." As to whether the proposed evidence would merely be cumulative, and whether or not it would likely produce a different result, we defer to the action of the trial court, for these are at least in part fact questions.

The serious question here is the complete absence of any showing that the failure to procure such evidence at the trial was not due to a lack of diligence. The only pertinent statement in the motion is that the evidence "was not known to or available to plaintiffs at the trial * * *." If that statement can be considered as a statement of fact, still no explanation is made, and no factual background or circumstances are stated to indicate why the evidence was not known or available; all the record facts here are to the contrary. Everett Windes had an office on the square, adjoining the scene of the injury, and Van Buren is not so large that the location of witnesses should be difficult. However, disregarding mere probabilities, and looking to the agreed transcript, we note: on March 6, 1961, defendant's counsel filed with the clerk a list of witnesses whom he desired subpoenaed for the defendant on a previous setting of this case; that list included "Everett B. Windes." For some undisclosed reason (perhaps because of the subsequent change of setting) *plaintiffs'* counsel endorsed on this list "voided," with his signature, thus clearly indicating that he had seen the names of the proposed witnesses. Prior to the trial date of June 14, 1961, defendant's counsel furnished the same list of witnesses but on a different paper, with his signature; this was not marked "filed" but is stated by the reporter to have been contained in the files. Defendant's counsel also wrote the clerk on June 6, 1961, confirming his "memorandum" and requesting subpoenaes for the same three witnesses (including Windes), listing them again. This letter was filed on June 7, 1961, a week before the trial. On June 7th a subpoena was issued to these three witnesses for June 14, 1961, at 9:00 a. m., and on June 8th the sheriff filed his return showing service on all of them. On June 7, 1961, another subpoena was issued to six witnesses, including the three previously subpoenaed for the defendant; in that subpoena the name of Windes was written as "Everett Winess"; the sheriff, on June 8,

filed his return showing service on all six of these witnesses. There appears also from the file, not otherwise identified, a longhand memorandum listing these six witnesses, and also the name of a doctor whom plaintiffs produced as a witness under a separate subpoena. There is a fair inference that this list was furnished by plaintiffs or their counsel, and that the subpoena for the six witnesses was issued for the plaintiffs. Counsel for plaintiffs do not question any of these documents, nor is any attempt made to explain them; nor is any point made concerning the different spellings of the name "Windes." The only reasonable inference is that Windes responded to the subpoenaes (one of which was in the identical name used in his own affidavit) and that he was available at the trial. If plaintiffs' counsel had not interviewed him by the time of trial, that was due to a pure lack of diligence, certainly not to any unavailability.

■ Regardless of the sufficiency or insufficiency of the motion for new trial and the questionable timeliness of the affidavit, we rule on the merits and as a matter of law that there was no showing of diligence in an effort to discover and produce the testimony of Windes at the trial; on the contrary there was and is an affirmative showing of a lack of diligence in that regard. This left no room for the exercise of a discretion by the trial court, and we hold that the granting of the new trial on this ground was an abuse of discretion.

We realize full well that there may have been circumstances which, from a standpoint of strategy, caused counsel to determine not to use Windes as a witness, while waiting perhaps to see if the defendant would put him on. If so, the opportunity passed him by, for defendant put on no testimony. The remarks in this opinion are not intended to be critical of counsel, who may always choose his own strategy; but if he gambles and loses, he cannot come back under these circumstances and get another trial for "newly discovered evidence."

The order granting a new trial is reversed and the cause is remanded with directions to reinstate the verdict and enter judgment for the defendant.

All of the Judges concur.