George Earl BROWN and Ethelyn Brown, Respondents,

v.

Mrs. Robert BOYD, Appellant.

No. 52638.

Supreme Court of Missouri, Division No. 2.

Jan. 8, 1968.

Stephen N. Limbaugh, Limbaugh, Limbaugh & Russell, Cape Girardeau, for respondents.

Albert C. Lowes and Kenneth L. Waldron, Buerkle & Lowes, Jackson, for appellant.

BARRETT, Commissioner.

On Monday evening, about 7:40 o'clock, March 19, 1962, Dr. George Brown parked his automobile on the south side of Broadway, opposite Child's Super Market, in Cape Girardeau. It had been raining and the streets were wet. Dr. Brown came out of the store with a sack of groceries in his left arm and again proceeded south across the 35-foot street toward his automobile. At the northwest corner of Broadway and Whitelaw, almost opposite Child's, there was a mercury vapor light and two-thirds down the block a second light and of course there was some light from the store windows. Dr. Brown was familiar with the heavy traffic of Broadway and as he approached the curb line saw vehicles traveling east in the south lane but he saw no closely approaching vehicles westbound. But by the time he reached the middle of the street he became aware of a lighted automobile traveling west and so he took a step or two and stopped with one foot on the center line of the street. The westbound automobile, driven by Mrs. Boyd, struck Dr. Brown's hip, knocked him down and into the path of an eastbound automobile driven by Jerry Wilkening. Jerry's automobile ran over the doctor's right leg.

For $500.00 Dr. Brown gave Jerry's insurer a covenant not to sue and on September 23, 1966, four and one-half years after the occurrence, tried and submitted his and his wife's cause of action for $16,000.00 damages against Mrs. Boyd under the humanitarian doctrine and solely upon the hypothesis that she "could have known" of his peril in time thereafter to have avoided hitting him "by either stopping or swerving." The jury, by a vote of nine to three, returned a verdict for the defendant, Mrs. Boyd. The plaintiffs filed a six-point motion for a new trial but the trial court without specifying "of record the ground or grounds," as required by Civil Rules 75.01, 78.01, V.A.M.R., simply "sustained said Motion for a New Trial." The defendant, Mrs. Boyd, appealed from the order and since the court had not specified the ground or grounds Mrs. Boyd, pursuant to Civil Rule 83.06(b), served a timely notice on Dr. Brown to "prepare the original brief" thus casting on the respondents the burden of justifying the trial court's order.

In justification the respondents have filed a three-point brief but all points are based upon the single assertion that the order granting a new trial was justified because "the closing argument to the jury of appellant's counsel was prejudicial as a matter of law." The respondents take the position of "prejudicial as a matter of law" for the reason that when the trial court fails to specify the ground or grounds for granting a new trial, "it shall never be presumed that the new trial was granted on any discretionary grounds." Civil Rule 83.06(c). In claiming prejudice as a matter of law the respondent Browns assert that therefore the trial court "had no discretion in ruling on the Motion for a New Trial." While this particular claim is not of determinative significance it should be noted in passing that the cases upon which the respondents rely do not necessarily support the assignment. In Elms v. Kansas City Public Service Co., Mo., 335 S.W. 2d 26, the question was whether a state-

ment a passenger-plaintiff gave a bus operator was an admission against interest. It was held that the statement exonerating the bus driver was a mere conclusion or an opinion but, bearing upon the respondents' point and here perhaps against them the court said, "There is, of course, no discretion as to the law of the case and, if no error was committed, the court erred in granting plaintiff a new trial." In Womack v. McCullough, Mo., 358 S.W.2d 66, a new trial was granted on the assignment of newly discovered evidence but in reversing the order with directions to reinstate the verdict, the court said, "We rule on the merits and as a matter of law that there was no showing of diligence in an effort to discover and produce the testimony of Windes at the trial; on the contrary there was and is an affirmative showing of a lack of diligence in that regard. This left no room for the exercise of a discretion by the trial court, and we hold that the granting of a new trial on this ground was an abuse of discretion."

But, as indicated, this particular claim is not determinative and the respondents' assignments are to be determined upon their essential merits. To demonstrate prejudice as a matter of law with respect to counsel's closing argument the respondent Browns make these assertions and assignments: It is said that in his closing argument defendant's counsel (1) "asserted that Respondents' contributory negligence caused the accident," (2) "that Respondents' negligence was the sole cause of the accident" and (3) "that the humanitarian doctrine was a 'rather far-out theory' and that Missouri was the only state that has such a theory." It is said that this argument was "all over the objection of Respondents and after such counsel had been instructed by the Court not to continue such argument"—all of which is asserted to be prejudicially erroneous as a matter of law. In this connection, although the court specified no ground or grounds, the court during the course of a colloquy said, "I'm

going to overrule your motion at this time but it might be a basis for a new trial later on," and, thereby, it is urged that the court indicated its basic reason for granting plaintiffs a new trial. And finally it is urged that in any event the argument was manifestly prejudicial and therefore should be considered as "(p)lain errors affecting substantial rights * * * though not raised in the trial court or preserved for review." Civil Rule 79.04.

While the assignments are to be considered upon their essential merits they must nevertheless be determined and disposed of upon and in the precise context of the record. The first reference to Dr. Brown's negligence, and inferentially to humanitarian negligence as a "theory," was in his counsel's opening argument to the jury: "Now, at the beginning of the trial there was a considerable amount of talk about the negligence of Dr. Brown himself, if he was negligent in walking across the street there, but this is not a part of this case now, we are not concerned at all, in accordance with what the judge has instructed you as to what the law is about what Mr. Brown did." This is not to say that plaintiffs' counsel injected Dr. Brown's contributory negligence into the case and thus provoked defense counsel to retaliate or even reply to the argument. As plaintiffs urge under the humanitarian submission Dr. Brown's contributory negligence was beside the point and was not a proper subject for argument by either party and yet, undeniably, plaintiffs' counsel introduced the subject. The first reference in defense counsel's argument was this: "In his argument he says there is nothing to it at all; *nothing about what Dr. Brown was doing out there, what care he was taking for himself at all*." (Emphasis supplied.) Whatever interpretation may be placed on this statement, whether it refers to sole cause, contributory negligence or what not, it was obviously in answer to plaintiffs' argument and there was no objection whatever to the argument

and in the absence of its being assigned in the court's order as a ground it is difficult to see how it could be urged as error and a reason now. Olsten v. Susman, Mo., 391 S.W.2d 328. And it should be interpolated that by its own terms the purpose of the plain error rule is to afford relief against "manifest injustice or miscarriage of justice" (Civil Rule 79.04) and it does not relieve "the litigant from his obvious duty to give the trial court an opportunity to rule." Misch v. C. B. Contracting Co., Mo.App., 394 S.W.2d 98, 102. The next reference was this: "Mrs. Boyd said she never did see him. Steve Limbaugh said, 'Well, that doesn't make any difference, she should have seen him.' Now, ladies and gentlemen, isn't that really beating the devil around the stump the wrong way? *The truth of the matter is that the sole cause of this accident is Dr. Brown being out there in the middle of the street*—(interrupted)." Plaintiffs' counsel objected "to this, sole cause has absolutely nothing to do with this and I ask that the jury be admonished that it has nothing to do with it." Following this objection there was a lengthy colloquy between counsel and the court as to sole cause and finally the court ruled—"Sole cause may not be argued in this case." Defense counsel inquired whether "that mean(s) the Court instructs me not to refer to it any further?" The court replied, "That's right, to desist from using those words in arguing this case." Defense counsel replied, "All right," the subject was not referred to again and there was no request by plaintiffs' counsel that the court rule on his original objection, there was no request for a reprimand and in these circumstances respondents are deemed to have been satisfied with the court's ruling. Olsten v. Susman, 391 S. W.2d 1. c. 330; Kaiser Alum. & Chem. Sales, Inc. v. Lingle Refrig. Co., Mo.App., 350 S.W.2d 128, 133.

The last reference to Dr. Brown was in this context: "Mr. Limbaugh points out to His Honor that the instruction says that she is charged with seeing or could have seen, then she could have put on her brakes or she could have swerved and Mr. Limbaugh makes the point about his three inches (i. e., had she swerved three inches she would not have hit Dr. Brown). Now, ladies and gentlemen, driving a big automobile going down a street, how many of us don't wander just a little bit on three inches? Are you going to take money from this lady and hand it to him on a matter of what could have been, could have swerved three inches? *What was Dr. Brown doing out there in the first* place?" Plaintiff's counsel interposed, "Now, I object to that again, Your Honor, that has no place in this lawsuit." Then there followed, in the jury's presence, a lengthy discussion between plaintiffs' counsel and the court as to the meaning of the humanitarian doctrine, what it "presupposed," and what could and could not be argued. And finally defense counsel objected "to Mr. Limbaugh's speeches" but the colloquy between the court and plaintiffs' counsel continued and finally defense counsel said "What's the ruling?" The court said, "I'm going to rule that you are going to have to quit talking about—. Mr. Limbaugh: Any negligence. The Court: His negligence. Mr. Lowes: I didn't think I was talking about any negligence." The court concluded this phase of the discussion by ruling "when he abandoned primary negligence, you can't come in here and argue primary negligence which is what you were starting to do." Defense counsel replied, "All right," and again there was no further reference to Dr. Brown's negligence and as to this subject there was no other or further request by plaintiffs' counsel for further curative relief, and again any objection is deemed to have been waived. Olsten v. Susman, supra.

After all this colloquy and these rulings in the presence of the jury, the parties not attempting to speak alone to the court or to have the jury excluded, defense counsel continued: "Ladies and gentlemen, it

comes somewhat difficult to make an argument here in line with Mr. Limbaugh's rather far-out theory, but you've got to judge this lady—(interrupted)." Plaintiffs' counsel made a general objection and immediately the court ruled: "The jury will disregard that remark about far-out theory because he is arguing on humanitarian, which is exactly what this thing is in now, the whole case is based on the humanitarian doctrine." The court and defense counsel then engaged in a further discussion of the humanitarian "theory"—at one point defense counsel saying "this state is the only state that's got that theory." Plaintiffs' counsel said, "I object to that, Your Honor." The court said, "That's not true. Now quit making statements like that. You know this isn't the only state that has a humanitarian doctrine." At this juncture plaintiffs' counsel said, "Your Honor, I at this time move for a mistrial on the ground that I think that the remarks that have been made by counsel in the proceedings so far in the argument are highly inflammatory and prejudicial to my client and that he will not have a fair trial and I ask that the jury be discharged." The court replied, "I'm going to overrule your motion at this time but it might be a basis for a new trial later on." Defense counsel then proceeded through over four and one-half pages of argument, according to the transcript, and there were no other interruptions or objections.

 This, the "far-out theory," was not a proper subject for argument to the jury. But, in the first place, the sentence was not completed and it does not appear just what counsel was going to say about "judging this lady." In the second place, in response to a mere general objection the court instructed the jury to disregard counsel's remark. Here as elsewhere following the ruling the court and counsel engaged in a lengthy colloquy in the jury's presence but at the time no one considered the fact as of prejudicial significance because there were no attempts to carry on

these discussions of legal problems out of the hearing of the jury and there were no specific objections for these reasons and no request to exclude the jury. It may be added in this connection that counsel on both sides, instead of making specific objections, giving proper reasons and making appropriate requests, made only general objections and then proceeded to engage one another and the court in these lengthy academic discussions. And again as to all the arguments, counsel did not in unmistakably plain language argue "contributory negligence" as such, neither did he argue "sole cause" as such, he may have intended to as the court indicated, but he was interrupted, the general objections were sustained, the subjects were not mentioned again and the plain error rule "may not be invoked to excuse mere failure to timely and properly object or to evade the primary responsibility of orderly presentation to the trial court in the first instance." Fisher v. Williams, Mo., 327 S.W.2d 256, 263. And here as to all the assignments the record refutes the plaintiffs' claim that there was a persistent and studied defiance of the court's rulings by defendant's counsel. In each instance counsel readily acceded to the court's orders or rulings and most important of all the arguments were in nowise comparable to the highly inflammatory arguments in Calloway v. Fogel, 358 Mo. 47, 213 S.W.2d 405, or Critcher v. Rudy Fick, Inc., Mo., 315 S.W.2d 421.

While not instances of the court's failure to state the ground or grounds for granting a new trial to one of the parties, all these assignments fall within and are governed by the fundamental principles suggested in the contrasting cases of Silverstein v. St. Louis Public Service Co., Mo., 295 S.W.2d 37, and Birmingham v. Coen, Mo., 320 S.W.2d 509. In the Silverstein case, a pedestrian struck by a bus, there was a verdict for the plaintiff and the defendant claimed that counsel's argument that the bus driver had failed to give decedent "a break" when he was "trapped" by

vehicular traffic. There too the objections were general, "outside the issues." The argument was considered in its context and it was concluded that "the argument was not wholly outside the issues and it was neither so misleading nor inflammatory nor otherwise objectionable as to compel the granting of a new trial in this court." In other words, the argument was not so manifestly improper, unfair or inflammatory as to be "prejudicial as a matter of law." In Birmingham v. Coen there was a verdict for the defendants and plaintiff's counsel objected to the statement, along with others, "that this here-now Brizendine, the eyeball witness, came out there to the street and suggested that maybe Bernard M. Birmingham ought to have a lawyer by the name of Ralph Wright (one of plaintiff's lawyers)." Other argument was set forth in its context and it was pointed out that the subject matter was improper, it was in point of fact collateral to any decisive issue, in part it was retaliatory but it was concluded: "The subject matter and the language employed were not manifestly inflammatory; it could not be confidently said that either improperly influenced the jury to an unjust result or deprived the plaintiff of a fair trial in a simple case involving simple issues." And here in conclusion, all the matters complained of in their context were not manifestly prejudicial as a matter of law and therefore the order granting plaintiffs a new trial is reversed and the cause remanded with directions to reinstate the verdict and enter judgment for the defendant. Olsten v. Susman, supra; Womack v. McCullough, supra.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.