James H. MORGAN, Respondent,

v.

Ernest WARTENBEE, Appellant.

No. KCD 29311.

Missouri Court of Appeals, Kansas City District.

July 31, 1978.

Max VonErdmannsdorff, VonErdmannsdorff, Zimmerman, Gunn & Werner, Kansas City, for appellant.

Timothy H. Bosler, Liberty, for respondent.

Before SHANGLER, P. J., SWOFFORD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

Plaintiff Morgan sued defendant Wartenbee, an insurance broker, for the latter's failure to procure requested fire insurance on plaintiff's building and its contents. Trial to a jury resulted in a $25,000.00 judgment in favor of plaintiff, from which defendant appeals. His attorneys on this appeal did not participate in the trial of the case.

In May, 1973, plaintiff was in the course of completing the construction of a diesel repair shop on property in close proximity to his home. At that time he obtained $5,000 fire insurance on the incompleted shop from Iowa National Mutual Insurance Company through defendant.

On December 5, 1973, plaintiff called upon defendant at his office and communicated his desire to obtain $10,000 additional fire insurance on the shop and $30,000 fire insurance on the contents. Plaintiff testified that defendant responded that he did not see any difficulty and continued "I'm not sure just which company I'll put you in but I'll cover you now." Plaintiff further testified that when he left defendant's insurance agency he felt that he had $15,000 coverage on the building and $30,000 on the contents.

After that conference, defendant attempted to place the additional insurance with Iowa National Mutual Insurance Company but that company declined to issue the additional coverage. Thereupon defendant wrote to Commercial Union Insurance Company in order to obtain the insurance in question. While this request by defendant

was being processed, a fire occurred on December 17, 1973, which completely demolished plaintiff's shop and its contents.

While there was no direct evidence so showing, apparently Iowa National Mutual Insurance Company promptly paid the $5,000 due to plaintiff under its policy. Commercial Union Insurance Company, although denying any legal liability to plaintiff, also paid $5,000 which defendant described to plaintiff as "a Christmas present".

Defendant relies on seven assignments of alleged error, each of which will be discussed in turn.

I

Defendant for the first point challenges Instruction No. 4 which is MAI 4.01, which constituted the instruction on measure of damages.[1] Defendant attacks this instruction on four separate grounds.

The first of these grounds is that the instruction fails to direct the jury to give defendant credit for $8,000 which plaintiff collected from Safety Kleen Corporation. The facts in connection with this claimed credit are as follows. At the time of the fire, plaintiff was renting a parts washer from Safety Kleen which consisted of a device containing a drum of solvent with a pump to keep the solvent circulating in a basin. The fire marshal reported to plaintiff that the Safety Kleen device was defective and caused some of the solvent to be shot out onto the floor and onto a salamander which was used for heating purposes. Plaintiff brought suit against Safety Kleen on the theory that the defective parts washer caused the fire in question. That litigation was settled for $8,000 paid by Safety Kleen to plaintiff.

Defendant contends that if the insurance policy had been issued as requested by plaintiff, then the insurance company

---

1. This instruction stated: "If you find the issues in favor of the plaintiff, then you must award the plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe he sustained as a direct result of the occurrence mentioned in the evidence."

would have been entitled to the $8,000 under principles of equitable subrogation; and he further claims that he should be in an equal position to that which would have been available to the insurer. We assume, without deciding, that defendant was entitled to such recoupment or offset.[2]

We also treat this item as available to the defendant as offset even though not pleaded by him as an affirmative defense, on the basis that evidence of the $8,000 payment was received into evidence without appropriate objection.[3] See Rule 55.33(b). Further, we need not deal with the question of whether defendant was obligated to submit an instruction on the right to offset this $8,000 item in order to preserve that point. Even assuming that defendant did not have such an obligation, for even more reason plaintiff had no obligation to include reference to that item in his damage instruction.

■ Defendant's contention that plaintiff was under an obligation to instruct the jury with respect to the specific $8,000 item runs counter to the fundamental philosophy which underlies the drafting of MAI 4.01. The thinking behind this particular MAI is to facilitate standardized submission by omitting detailed itemization of damage. In place of that, it is intended that the particular elements of damage in each individual case will be presented to the jury by means of the argument by counsel. This fundamental explanation of MAI 4.01 is set forth in *Boten v. Brecklein,* 452 S.W.2d 86 (Mo.1970) l.c. 93, as follows:

"It is contemplated by MAI that where a general instruction of this kind is given the jury will be properly advised by the argument concerning details. If the attorneys disagree as to the elements of and the proper measure of damages any

question raised should be settled by the court either at the instruction conference or by its ruling upon objections made during the course of argument."

This explanation of MAI 4.01 has been repeated in *Crawford v. Smith,* 470 S.W.2d 529 (Mo. banc 1971).

The contemplated amplification with respect to damages did occur during the argument of this case. As part of his closing argument, defendant's counsel did specifically point out the facts in evidence relating to the $8,000 recovery to the jury. This argument served precisely the purpose of spelling out to the jury the elements of damage as discussed by the Supreme Court in the *Boten* opinion.

■ Furthermore, it appears that the jury did, in fact, give defendant the benefit of the $8,000 offset. According to plaintiff's testimony, his loss on the shop building was $15,000 and his loss on the contents came to $64,957.76. If all of the insurance had been procured, as promised by defendant, that coverage would have totaled $45,000, which, of course, was less than the amount of total loss. The award by the jury was only $25,000 which leaves room for it having taken into consideration $5,000 insurance recovery from Iowa National Mutual Insurance Company, $5,000 recovery from Commercial Union Insurance Company and $8,000 from Safety Kleen. From this it appears that defendant has suffered no prejudice from the failure of Instruction No. 4 to mention the $8,000 item.

■ Defendant's second objection to Instruction No. 4 is that it fails to limit his liability to the amount which would have been due to plaintiff if the full amount of

---

2. There are cases which hold that an insured can be called upon to account to the insurer-subrogee only if he has recovered more from the insurer and the wrongdoer than the total of his loss, and then only for the excess. E. g. *Camden Fire Insurance Ass'n v. Prezioso,* 93 N.J.Eq. 318, 116 A. 694 (1922); *Shawnee Fire Insurance Co. v. Cosgrove,* 121 P. 488 (Kan. 1912). See, however, *Auto Owners Protective Exchange v. Edwards,* 82 Ind.App. 558, 136 N.E. 577 (1922).

3. Plaintiff did object to evidence concerning the $8,000 recovery but on the basis that this was irrelevant because constituting "reimbursement from a collateral source." Plaintiff's counsel did not object on the ground that this item related to an offset not affirmatively pleaded.

insurance had been issued as requested by him. The basic answer to this argument is the same as that already discussed immediately above. The scope of and limitations upon plaintiff's recovery were, as discussed in *Boten*, matters for jury argument. Furthermore it is to be noted that plaintiff's verdict-directing Instruction No. 3 (see footnote 4, infra) affirmatively required the jury to find as one of the elements necessary for plaintiff's recovery that plaintiff had requested and defendant had agreed to provide a total of $15,000 coverage for the building and $30,000 coverage for the contents. Under familiar principles, Instructions 3 and 4 must be read together. Furthermore the $25,000 verdict was less than the total amount of requested coverage, after deducting the appropriate offsets.

■■■ Defendant's next attack upon Instruction No. 4 is that it fails to give credit against any recovery for the amount of premiums for which plaintiff would have been obligated had the insurance been issued. If this objection were otherwise valid, it nevertheless is not entitled to be reviewed because not contained in defendant's motion for a new trial. The jury verdict and the judgment thereon were filed on October 5, 1976. Defendant's motion for new trial was filed within due time on October 18, 1976. However, defendant made his objection for the first time concerning the lack of credit for premium on January 14, 1977, when the motion for new trial came before the court for argument. At that time defendant's counsel stated to the court that he would like to amend his motion to add the words "and for the premium that would have been due had an additional policy been issued." It is well settled that a motion for new trial may not be amended to add a new point after the expiration of the time provided by statute or court rule. *State ex rel. Iba v. Ellison*, 256 Mo. 644, 165 S.W. 369 (banc 1914); *Lloyd v. Garren*, 366 S.W.2d 341 (Mo.1963); *Mt. Vernon Bank v. Porter*, 148 Mo. 176, 49

S.W. 982 (1899); *State ex rel. Hicklin v. Fidelity and Casualty Company of New York*, 274 S.W.2d 596 (Mo.App.1955). The trial court was, therefore, correct in denying defendant's belated attempt to amend his motion for new trial.

■■■ Defendant's final attack upon Instruction No. 4 centers upon the term "occurrence." Defendant argues that there were two "occurrences" in this case, namely: first the fire, and second the failure to obtain additional insurance. He contends that defendant could only be liable for failure to obtain the insurance but not for the fire itself; and that by failing to distinguish between these two factors, the jury was confused and misled. Defendant finalizes his argument on this point by the statement in his brief that "[t]here can be little doubt but that the jurors who tried the case of *Morgan v. Wartenbee* believe that they tried a fire case."

A fair reading of the record fails to bear out defendant's statement last quoted. The opening statements, the evidence and the closing arguments, as well as the directions of Instruction No. 3 all focused upon the question of whether defendant agreed to obtain the additional insurance requested by plaintiff and whether defendant was negligent in failing to do so. What is more, the verdict returned by the jury plainly shows that the jury members fully understood the issue correctly to be a negligent failure to obtain the insurance, and the amount of their verdict reflects that proper understanding. The jury could not have been reasonably misled by the use in Instruction No. 4 of the general term "occurrence". In this respect the present case is like *Nelson v. R. H. Macy & Co.*, 434 S.W.2d 767 (Mo.App.1968), and it is unlike the factually distinguishable cases cited by defendant.

II

■■■ Defendant's next major point attacks Instruction No. 3.[4] This attack subdi-

---

4. Instruction No. 3 directed the jury as follows: "Your verdict must be for the plaintiff if you believe: First, plaintiff requested that defend- ant provide a total fire insurance coverage on the plaintiff's building of $15,000 and on plaintiff's building contents of $30,000, and Second,

vides into two prongs. The first prong raises objection to an alleged variance between the amended prayer for damages in plaintiff's petition as compared to the figures set forth in the instruction.

The alleged discrepancy does not really exist. The instruction directs the jury that in order to find for the plaintiff it must believe that the plaintiff requested and defendant agreed to provide total insurance coverage of $15,000 on the building and $30,000 on the contents. The sum of these two figures is, of course, $45,000. Defendant complains that the prayer for damages is only $35,000. That comparison seeks to create a conflict where none exists.

The $45,000 represents what the parties discussed and agreed upon. That sum, however, must be reduced by the $10,000 paid by the two insurance companies in order to arrive at what plaintiff has lost (disregarding for the moment the $8,000 received from Safety Kleen and which has already been discussed supra). Regardless of what offsets may be proper in order to arrive at net damages, Instruction No. 3 committed no error in reflecting correctly plaintiff's version of the agreement which had been made by the parties on December 5, 1973.

■ The second prong of defendant's attack upon Instruction No. 3 is that it commingles contract and tort liability. Defendant's criticism is not well taken. The law clearly grants to a plaintiff in Morgan's position a choice of whether to sue the defendant broker for breach of contract or for commission of negligence. 43 Am. Jur.2d, Insurance, § 174, p. 230; *Pittman v. Great American Life Insurance Company*, 512 S.W.2d 857 (Mo.App.1974); *Hall v. Charlton*, 447 S.W.2d 5 (Mo.App.1969). The obligation is based upon the defendant's contractual undertaking which has consideration inasmuch as it was "with a view to earning a commission", *Hall v. Charlton, supra.* And a negligent failure to perform the undertaking can give rise to tort liability. *Helton v. Hake*, 564 S.W.2d 313 (Mo. App.1978). In this case plaintiff chose to sue in tort for the negligence, as he had a right to do.

### III

■ For his third major point, defendant complains that plaintiff was obligated to prove that he could have collected under the policies had they been issued, and his evidence fails to so prove. The difficulty with this argument is that it assumes that the burden of this proof was upon plaintiff whereas in fact the burden was upon defendant to show, if it be a fact, that plaintiff could not have recovered even if the policies had been written.

This point is forcefully stated in *Stevens v. Wafer*, 14 S.W.2d 295 (Tex.Civ.App.1929) l.c. 296. In that case, as here, a plaintiff sued for breach of contract by a broker to obtain insurance. The plaintiff obtained judgment and on the broker's appeal, the court stated that "[t]he sole question involved in this appeal is whether appellee, without alleging and proving that he could have recovered under the insurance contract which should have been procured for him by appellant, can recover damages against appellant for failing to procure the contract." The court then proceeded to answer that question in the affirmative:

"The record shows that appellant represents eight or nine different fire insurance companies, and it is entirely possible that they each issue a different kind of policy. Appellee has no way of knowing with which company appellant intended to place his insurance, and consequently, if it be true that the policies are not uniform, it would be impossible for appellee to allege what the terms of the in-

defendant agreed to immediately provide such insurance coverage, and Third, defendant failed to provide such insurance coverage and failed to notify plaintiff of such failure, and Fourth, defendant was thereby negligent, and Fifth, as a direct result of such negligence plaintiff sustained damage.

"The term 'negligence' as used in this Instruction means the failure to use that degree of care that an ordinary careful and prudent person would use under the same or similar circumstances."

tended policy would have been if it had been issued.

\* \* \* \* \* \*

"He has alleged the contract and its breach and is claiming damage for that breach, and that but for appellant's breach of contract appellee would have had a valid and subsisting policy of fire insurance on his buildings in the additional sum of $600 in one of the companies represented by appellant.

"We think that appellee has alleged a good cause of action, and that appellant, if the loss occurred under conditions which would relieve his companies, or any of them, from liability, or have prevented appellee from recovering for the loss, should have alleged and proved those facts."

The law is the same in Missouri. So in *Hans Coiffures International, Inc. v. Hejna*, 469 S.W.2d 38 (Mo.App.1971) the plaintiff sued for an insurance broker's failure to obtain promised insurance. The broker defended on the theory that plaintiff could not have recovered on the policy if issued because of its failure to keep the proper records which would have been required by the insurance company. The court rejected that defense holding as follows:

"The legal barrel of defendant's challenge is that *plaintiff* failed to prove it kept books and records that would enable an insurer to accurately determine the amount of its loss. That puts the shoe on the wrong foot. The defendant-agent incorrectly assumes the hypothetical books-and-records clause was a condition precedent to plaintiff's recovery and that plaintiff had to prove compliance. Not so. It was an affirmative defense, a part of defendant's case, not plaintiff's. If an insurer pleads, as the defendant-agent does here, an exception to the general liability clause of its policy it has thereby set up an affirmative defense and has the burden of proving it."

See also *Hall v. Charlton*, supra.

## IV

Defendant's next point is that he should have been granted a new trial because of newly discovered evidence. The claimed evidence newly discovered after trial relates to the settlement between plaintiff and Safety Kleen Corporation. Defendant says that he has discovered since trial that in connection with that settlement plaintiff gave Safety Kleen a general release, and that this general release has the legal effect of releasing not only Safety Kleen but also defendant whose right of subrogation was thereby foreclosed.

The trial court's denial of a new trial for this reason can be justified on at least two grounds. In the first place defendant has offered no proof that plaintiff gave Safety Kleen a general release. The law is well settled that a motion for new trial on the basis of newly discovered evidence must be supported or accompanied by some proof, either within itself or by accompanying affidavits, so that the examining court will not be lead into granting of a new trial which may rest upon imagination, hope, misjudgment or intentional misrepresentation. *Womack v. McCullough*, 358 S.W.2d 66 (Mo.1962); *Gehner v. McPherson*, 430 S.W.2d 312 (Mo.App.1968).

Moreover the new trial will not be granted unless the movant can show that the evidence in question could not have been obtained in time for trial by the exercise of due diligence. *Womack v. McCullough, supra; Gehner v. McPherson, supra; Koenig v. Skaggs*, 400 S.W.2d 63 (Mo.1966); *Pippas v. Pippas*, 330 S.W.2d 132 (Mo.App. 1959). Defendant's motion for new trial merely makes a bald assertion that it was not negligent in failing to discover this evidence sooner. Such an unsupported conclusion does not suffice. *Gehner v. McPherson, supra.* Moreover, the facts concerning the $8,000 settlement were elicited by defendant's counsel upon cross-examination of the plaintiff and the questions asked at that time made it quite apparent that defendant's counsel was well aware of the settlement and did not stumble upon that fact by pure accident during the course

of questioning. No reason is given or suggested why defendant could not have fully explored all aspects of this settlement prior to trial, including the question as to the nature of the release given.

The granting of a new trial for newly discovered evidence is disfavored, and whether or not a motion in this nature should be granted rests largely in the discretion of the trial court. *Womack v. McCullough, supra; Gehner v. McPherson, supra.* The record is far from showing any abuse of discretion by the trial court in overruling the motion on that ground here.

### V

Defendant next challenges the exclusion of evidence offered by him through an alleged expert by way of a hypothetical question as to the value of plaintiff's shop which was destroyed by fire. As soon as the hypothetical question was asked, plaintiff objected and the objection was sustained. At that point defendant's counsel desisted from going any further and completely failed to make any offer of proof as to what the answer would have been. By not making the required offer of proof, defendant failed to preserve any question for appellate review. *Elliott v. Richter,* 496 S.W.2d 860 (Mo.1973); *Stringer v. Reed,* 544 S.W.2d 69 (Mo.App.1976); *Cobb v. R. W. Beasley Construction Co.,* 536 S.W.2d 535 (Mo.App.1976); *Keeshan v. Embassy Investment Co.,* 303 S.W.2d 666 (Mo.App. 1957).

Furthermore, any question as to the exclusion of this evidence was inadequately preserved in defendant's motion for new trial. The closest which that motion comes to raising this point is paragraph 8 which alleges that "the Court erred in excluding competent, relevant and material evidence offered by the plaintiff." Such a point in a motion for new trial is insufficient. *Associates Discount Corporation v. Isgriggs,* 431 S.W.2d 694 (Mo.App.1968).

Defendant attempts to expand this Point in the argument portion of his brief by arguing that there is no evidence to demonstrate that plaintiff had an insurable interest in the amount of $45,000. No question as to insurable interest having been contained in the Points Relied On, that contention is not properly presented for consideration. Rule 84.04(d).

### VI

Defendant next objects to the exclusion of certain evidence offered by him relating to "the condition of the dwelling" which defendant now contends would have tended to show non-insurability of plaintiff's shop. Plaintiff's house in which he resided was in close proximity to the diesel repair shop, but it is difficult to perceive how the condition of the dwelling could have in any substantial respect affected the insurability of the shop building. In any event, no offer of proof was made with respect to the proposed evidence nor was any adequate reference made to this matter in the motion for new trial. Accordingly, this point is not preserved for review.

### VII

As his final point, defendant contends that Commercial Union Insurance Company was a necessary party to this litigation and the failure to make it a party constituted reversible error. The requirements as to necessary and indispensable parties are covered by Rule 52.04. Whether a party is necessary is covered by Sub-section (a) while the question of indispensability is covered in Sub-section (b). Unless a party is first found to be necessary under Sub-section (a) no consideration need be given to indispensability. *Bunting v. McDonnell Aircraft Corp.,* 522 S.W.2d 161 (Mo. banc 1975); *State ex rel. Emcasco Ins. Co. v. Rush,* 546 S.W.2d 188 (Mo.App.1977).

A person is a necessary party if in his absence complete relief cannot be accorded among those who are already parties. That portion of Sub-section (a) is not applicable here because complete relief can be granted between Morgan and Wartenbee without the presence of Commercial Union. Morgan here sues upon an undertaking by

Wartenbee to obtain insurance, which could have been placed in any company selected by Wartenbee. As a matter of fact, Wartenbee did approach at least one other insurance company in an effort to place this insurance. The gist of plaintiff's complaint is that the insurance was never placed with any insurance company and he asks damages against Wartenbee because of the absence of that insurance. By the very essence of Morgan's claim against Wartenbee, he disclaims any right to recovery against Commercial Union.

The issues between Morgan and Wartenbee are whether Wartenbee promised to obtain the insurance and whether his failure to do so was negligent. The presence of Commercial Union in the lawsuit is unnecessary for the determination of those questions.

The only other ground under Sub-section (a) of Rule 52.04 for holding Commercial Union to be a necessary party would be if it claimed a direct interest in the subject of the action. Commercial Union has never itself presented any claim of an interest, and under the facts it has no direct interest. "Such interest does not include a mere, consequential, remote or conjectural possibility of being in some manner affected by the result of the original action. It must be such a direct claim upon the subject matter of the action that the intervenor will either gain or lose by direct operation of the judgment to be rendered." *Bunting v. McDonnell Aircraft, supra*, l.c. 169. See also *State ex rel. Emcasco Ins. Co. v. Rush, supra*.

There being no error, the judgment is affirmed.

All concur.